78 A.3d 1020

PENNSYLVANIA STATE ASSOCIATION OF JURY COMMIS-
SIONERS, Larry A. Thompson, President Pennsylvania State
Association of Jury Commissioners, Martha S. Smith, Duly
Elected Jury Commissioner of Chester County, Mary Jane
Dellafiora, Duly Elected Jury Commissioner of Indiana County,
George Richard Zimmerman, Duly Elected Jury Commissioner
of Washington County, Pamela L. Bisbing, Duly Elected Jury
Commissioner of Monroe County, Clinton A. Bonetti, First
Vice President of Pennsylvania State Association of Jury Com-
missioners and Duly Elected Jury Commissioner of Butler
County, Richard L. Ward, Jr., Duly Elected Jury Commissioner
of Columbia County, Kristen Gensel, Duly Elected Jury Com-
missioner of Columbia County, Joanne Cisco Olszewski, Duly
Elected Jury Commissioner of Montgomery County, Donald
Lee Dissinger, Duly Elected Jury Commissioner of Perry Coun-
ty, Judith L. Fisher, Duly Elected Jury Commissioner of Wash-
ington County, Sandra Oden Kellner, Duly Elected Jury Com-
missioner of Venango County, Doretta K. Mellott, Duly Elected
Jury Commissioner of Fulton County, Glenn E. Ford, Duly

Elected Jury Commissioner of Fulton County, Marjorie A. Wassmer, Duly Elected Jury Commissioner of Pike County, Gertrude Smith, Duly Elected Jury Commissioner of Pike County, Jerry Olson, Duly Elected Jury Commissioner of Elk County, Shelley L. Blythe, Duly Elected Jury Commissioner of Beaver County, Appellants

v.

COMMONWEALTH of Pennsylvania c/o Attorney General of Pennsylvania, Honorable Thomas Corbett, Governor of Pennsylvania, Honorable Carol Aichele, Secretary of the Commonwealth of Pennsylvania, Honorable Kathleen Kane, Attorney General of Pennsylvania, Honorable Joseph B. Scarnati, III, Elected President Pro Tempore of the Senate of the Commonwealth of Pennsylvania, Honorable Samuel H. Smith, Speaker of the House of Representatives of the Commonwealth of Pennsylvania, Appellees

County Commissioners Association
of Pennsylvania, Intervenors.

Supreme Court of Pennsylvania.

Argued Sept. 11, 2013.

Decided Oct. 18, 2013.

362

364

Adam Gordon Klein, Esq., Robert L. Knupp, Esq., Smigel, Anderson & Sacks, L.L.P., Anthony T. McBeth, Esq., Harrisburg, for County Commissioners Association of Pennsylvania.

David C. Cleaver, Esq., Keller, Keller and Beck, L.L.C., Waynesboro, Samuel C. Stretton, Esq., Law Office of Samuel C. Stretton, West Chester, for Pennsylvania State Association of Jury Commissioners, et al.

Jonathan F. Bloom, Esq., Ian Michael Long, Esq., Karl Stewart Myers, Esq., Stradley, Ronon, Stevens & Young, L.L.P., Philadelphia, for Hon. J.B. Scarnatti, III, Pres Pro Temp, Senate of PA & Hon. S.H. Smith, Speaker, House of Reps of PA.

John Bartley Delone, Esq., Kathleen Granahan Kane, Esq., John G. Knorr, III, Esq., PA Office of Attorney General, for Hon. T. Corbett, Gov. of PA, Hon. C. Aichele, Sec. of Comm. of PA & Hon. K. Kane, PA Atty. General.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice STEVENS.

This direct appeal from an order denying injunctive and declaratory relief by a three judge panel of the Commonwealth Court concerns various constitutional challenges to a law recently enacted by the General Assembly known as Act 4 of 2013.[1] Specifically, it is alleged that Act 4 of 2013 consti-

---

1. Act of May 6, 2013, P.L. 22, No. 4, entitled:

 AN ACT Amending the act of August 9, 1955 (P.L. 323, No. 130), entitled as amended, "An act relating to counties of the first, third, fourth, fifth, sixth, seventh and eighth classes; amending, revising, consolidating and changing the laws relating thereto; relating to imposition of excise taxes by counties, including authorizing imposi-

tutes (1) a violation of the separation of powers doctrine as embodied within Article V, Sections 1 and 10 of the Pennsylvania Constitution establishing a unified judicial system supervised by this Court;[2] (2) an improper delegation of legislative authority to the executive branch in violation of Article II, Section 1 of the Pennsylvania Constitution;[3] and (3) a violation of the First Amendment to the United States Constitution.[4] The Commonwealth Court, in a unanimous decision, rejected the constitutional challenges, and dismissed the action. After initial review, this Court ordered the parties to present oral argument on the first two issues. Following oral argument, on September 17, 2013, this Court entered judg-

tion of an excise tax on the rental of motor vehicles by counties of the first class; and providing for regional renaissance initiatives;" further providing for applicability and for the abolishment of the office of jury commissioner.

Act 130 of 1955 is commonly referred to as The County Code, which is contained in Title 16 of the Pennsylvania Statutes.

2. **Article V, Section 1–Unified Judicial System.**

The judicial power of the Commonwealth shall be vested in the unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system.

**Article V, Section 10–Judicial Administration.**

(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace [ . . . ].

\* \* \*

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts . . . and supervision of all officers of the Judicial Branch [ . . . ].

3. **Article II, Section 1.**

The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.

4. **First Amendment to the United States Constitution.**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The First Amendment is made applicable to the states via the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).

ment and filed a *per curiam* order affirming the Commonwealth Court's order, indicating "Opinions to follow." [5] This Opinion is written in accordance with our *per curiam* order and fully explains our holding that Act 4 of 2013 is constitutional.

## I. Background

By way of background, on December 15, 2011, the Governor signed into effect House Bill 1644, and it became Act 108 of 2011.[6] Act 108 of 2011 sought to revise Section 1805 of The County Code, *as codified* 16 P.S. § 1805, by revising subsection (b) relating to surplus farm equipment, and adding a subsection (c) to provide procedures for the commissioners of counties of the third through eighth class to hold auction sales of personal property via online and electronic forums. Additionally, Act 108 of 2011 sought to add subsection (f) to Article IV, Section 401 of The County Code, *as codified* 16 P.S. § 401, and amend Chapter I, Section 102(a) of The County Code, *as codified* 16 P.S. § 102(a), to authorize the governing bodies of second class A and third through eighth class counties to adopt a resolution abolishing the office of jury commissioner.

Upon the enactment of Act 108 of 2011, the Pennsylvania State Association of Jury Commissioners (the Jury Commissioners Association) and duly elected jury commissioners from Butler, Chester, Indiana, and Washington Counties filed, in the Commonwealth Court's original jurisdiction, an action for declaratory and injunctive relief against the Commonwealth, Governor, and Attorney General, contending that Act 108 of 2011 was unconstitutional as violative of the "single subject rule" of Article III, Section 3 of the Pennsylvania Constitution,[7] the separation of powers doctrine as embodied within Article V, Sections 1 and 10 of the Pennsylvania Constitution

5. Madame Justice Todd noted her dissent.

6. Act of December 15, 2011, P.L. 442, House Bill No. 1644 of 2011, Printer's Number 2730, became Act 108 of 2011 upon its enactment.

7. **Article III, Section 3–Form of Bills.**
 No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

establishing a unified judicial system supervised by this Court, and the due process clause of the Fourteenth Amendment to the United States Constitution under the void for vagueness doctrine.[8] The County Commissioners Association of Pennsylvania (the County Commissioners Association) sought and was granted intervenor status with regard to the original action, and the Governor and Attorney General were then dismissed upon consent of all parties.

After the pleadings in the matter were closed, the Jury Commissioners Association, along with the various duly elected jury commissioners, and the County Commissioners Association filed cross-motions for judgment on the pleadings. The Commonwealth Court, sitting *en banc*, in a 4–3 decision, rejected the constitutional challenges, thus finding in favor of the County Commissioners Association and dismissing the action. *Pa. State Ass'n of Jury Comm'rs v. Commonwealth*, 53 A.3d 109 (Pa.Cmwlth.2012) (*en banc*), *reversed, Pa. State Ass'n of Jury Comm'rs v. Commonwealth*, 619 Pa. 369, 64 A.3d 611 (2013).

The Jury Commissioners Association and the various duly elected jury commissioners filed a direct appeal to this Court, and upon review, we found that Act 108 of 2011 clearly, palpably, and plainly violated the "single subject rule" of Article III, Section 3 of the Pennsylvania Constitution. Accordingly, we reversed the order of the Commonwealth Court on this sole basis.[9] *Pa. State Ass'n of Jury Comm'rs. v. Commonwealth*, 619 Pa. 369, 64 A.3d 611 (2013).

Following our decision, the matter of abolishing the office of jury commissioner was revisited by the General Assembly. Specifically, on April 16, 2013, House Bill 808, Printer's Number 837, passed the state Senate by a vote of 38–12, and on April 24, 2013, it passed the state House of Representatives by a vote of 156–39. On May 6, 2013, the Governor signed the

---

8. **14th Amendment to the United States Constitution, Section 1.**
 [ ... ] No state shall [ ... ] deprive any person of life, liberty, or property without due process of law [ ... ].

9. Given the disposition of the case, this Court found it unnecessary to address any remaining arguments.

bill into effect, and it became Act 4 of 2013, authorizing the governing bodies of second class A and third through eighth class counties to adopt a resolution abolishing the office of jury commissioner. Act 4 of 2013, indicating it shall take effect immediately, amended Section 401 of The County Code, by addressing subsection (f), which provides the following:

**Section 401. Enumeration of Elected Officers.-**

\* \* \*

(f) After review of the procedures in effect within the county to ensure that lists of potential jurors are a representative cross section of the community, the governing body of a county of the second class A or third through eighth class may adopt, by a majority vote, a resolution abolishing the office of jury commissioner. Upon approval of the resolution, the office of jury commissioner shall expire at the completion of the current jury commissioners' terms of office.

16 P.S. § 401(f).

Upon the enactment of Act 4 of 2013, the Jury Commissioners Association and duly elected jury commissioners from various counties [10] (collectively, Appellants) filed, in the Commonwealth Court's original jurisdiction, an action for declaratory and injunctive relief naming as respondents the Commonwealth, the Governor, the Attorney General, the Secretary of the Commonwealth, the President *Pro Tempore* of the Pennsylvania Senate, and the Pennsylvania Speaker of the House of Representatives, contending that Act 4 of 2013 was unconstitutional in accord with the three rationales set forth *supra*, pp. 3–4. In due course, the County Commissioners Association sought and was granted intervenor status to oppose Appellants' constitutional challenges to Act 4 of 2013.

To expedite the consideration of the matter, the Commonwealth Court directed all parties to file dispositive motions for summary relief pursuant to Rule 1532(b) of the Pennsylvania

10. The duly elected jury commissioners involved in this action are from Chester, Indiana, Washington, Monroe, Butler, Columbia, Montgomery, Perry, Venango, Fulton, Pike, Elk, and Beaver Counties.

Rules of Appellate Procedure.[11] Sitting in a three judge panel, the Commonwealth Court unanimously denied Appellants' application for summary relief, but granted Appellees' and Intervenor/Appellee's applications for summary relief. *Pa. State Ass'n of Jury Comm'rs v. Commonwealth,* 74 A.3d 333 (Pa.Cmwlth.2013).[12] Thus, the Commonwealth Court denied Appellants' request for declaratory and injunctive relief and entered judgment in favor of Appellees and Intervenor/Appellee, thereby dismissing the action. *See id.*

In rejecting Appellants' contention Act 4 of 2013 violates the separation of powers doctrine or Article V of the Pennsylvania Constitution, the Commonwealth Court began with an acknowledgement that *Snyder v. Unemployment Compensation Bd. of Review,* 509 Pa. 438, 502 A.2d 1232 (1985) (Flaherty, J., plurality), and *Wajert v. State Ethics Comm'n,* 491 Pa. 255, 420 A.2d 439 (1980), recognize that the Pennsylvania Constitution provides the Supreme Court with sole authority for the general supervision of the state courts. The Commonwealth Court then turned to an examination of its holding in *Olenginski v. County of Luzerne,* 24 A.3d 1103 (Pa.Cmwlth.2011), *appeal denied,* 615 Pa. 787, 42 A.3d 1061 (2012), which relied upon this Court's decision in *In re Administrative Order No. 1–MD–2003,* 594 Pa. 346, 936 A.2d 1 (2007). Specifically, the Commonwealth Court explained that, in *Olenginski,* it examined the Pennsylvania Constitution and found that county prothonotaries are expressly listed as "county officers" under Article IX, Section 4. Moreover, county prothonotaries have no power to act in a judicial capacity or to act as an attorney; they perform ministerial functions derived from statute. Nor, as *Olenginski* noted, does the Pennsylvania Constitution provide that prothonotaries are part of the judiciary or supervised

**11. Pa.R.A.P. 1532. Special and Summary Relief**

* * *

(b) **Summary relief.** At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear.

**12.** For ease of discussion, we shall refer to the Commonwealth Court's decision as *Jury Commissioners I.*

by the judiciary. Thus, in *Olenginski,* the Commonwealth Court held that prothonotaries are "county officers" as opposed to "judicial officers," subjecting them to being abolished by the legislature. Extending the reasoning of *Olenginski* to the instant case, the Commonwealth Court similarly concluded that the Pennsylvania Constitution provides that the office of jury commissioner is a "county office" and not a "judicial office." Though recognizing the office of jury commissioner is not specifically listed as a "county office" in Article IX, Section 4 of the Pennsylvania Constitution, the Commonwealth Court concluded it is a "county office" from "time to time" provided by law such that it is part of the county government under this State's Constitution.

The Commonwealth Court specifically stated:

There is no support in the law for the proposition that the elected office of jury commissioner is part of the judicial system, because the courts have no *constitutional* authority to exercise control over this *statutorily*-created office. It is clear that the General Assembly has the general power to repeal the laws it has enacted, unless of course, the law amended the Pennsylvania Constitution and was ratified by the citizens of the Commonwealth.

\* \* \*

In summary, much of [Appellants'] argument rests on an assumption that our Supreme Court, rather than the General Assembly, initiated and implemented the jury commissioner system set forth in the Judicial Code.[13] As emphasized above, the jury commissioner system is a creature of the legislature. We are not faced here with the question of whether the General Assembly has impermissibly interfered with a system that the Supreme Court has implemented through its rule-making authority.

*Jury Commissioners I,* 74 A.3d at 338 (emphasis in original) (quotation omitted) (footnote added).

**13.** The Judicial Code is contained in Title 42 of the Pennsylvania Consolidated Statutes at Sections 101–9909.

The Commonwealth Court rejected the notion that the office of jury commissioner is a "judicial office" because it is found in the Judicial Code and not The County Code. *Id.* at 338. To the contrary, the Commonwealth Court found the Judicial Code does not support the contention that the office of jury commissioner is a "judicial office," and, in fact, the elected jury commissioners fall within the definition of "county staff," which is set forth in the Judicial Code at 42 Pa.C.S. § 102. The Commonwealth Court recognized that this Court, in analyzing the Judicial Code, has "observed that its general supervisory authority over the unified judicial system *does not* extend to county staff, including elected jury commissioners." *Jury Commissioners I,* 74 A.3d at 339 (citing *Beckert v. Warren,* 497 Pa. 137, 148, 439 A.2d 638, 644 (1981)) (emphasis in original).

The Commonwealth Court further rejected the premise that jury commissioners are excluded from The County Code, noting that they are listed in The County Code as "elected officers" under Section 401(a) of Article IV titled "County Officers," 16 P.S. § 401(a)(12), and as county officers who are permitted to organize for themselves a State association under Section 440, 16 P.S. § 440(12). The Commonwealth Court specifically concluded that "the elected office of jury commissioner is neither one of rule-making by our Pennsylvania Supreme Court nor one enumerated in and thus afforded special protection under the Pennsylvania Constitution. It is a county office created by statute and one that the legislature, in its wisdom, is free to abolish." *Jury Commissioners I,* 74 A.3d at 339 (citations omitted).

In rejecting Appellants' contention Act 4 of 2013 unlawfully delegates to the governing bodies of counties the power to abolish the office of jury commissioner without guidance on how juries should be selected, in derogation of the powers conferred upon the judicial branch, the Commonwealth Court, noting this issue is related to the separation of powers issue, held the Judicial Code does not vest any powers or duties in an elected jury commissioner. *Id.* Rather, the Commonwealth Court found the jury selection commission as a body, which

acts by a majority of its members, possesses all of the powers and duties. *Id.* (citing 42 Pa.C.S. § 2124). Thus, the Commonwealth Court reasoned, Act 4 of 2013 "only empowers the governing authority of a county subject to the law to eliminate two of the three positions on the jury selection commission— *i.e.,* the two elected jury commissioners," thereby leaving the president judge as the sole remaining member of the county jury selection commission. *Jury Commissioners I,* 74 A.3d at 340. The Commonwealth Court emphasized that:

> For a county where the governing body elects to eliminate the elected office of jury commissioner, we have confidence that the president judge, as the sole remaining member of the county jury selection commission, will ensure that the county continues to compile lists of potential jurors in a manner consistent with the Judicial Code.

*Id.*

Finally, in finding no merit to Appellants' contention Act 4 of 2013 violates the First Amendment rights of candidates on the ballot for election to the post of jury commissioner in the upcoming 2013 Municipal Election, the Commonwealth Court specifically rejected *Campbell v. Bysiewicz,* 242 F.Supp.2d 164 (D.Conn.2003), upon which Appellants relied, on the basis it is a nonbinding federal district court decision and does not address the issue in this case. On the other hand, the Commonwealth Court found *Lyons v. City of Pittsburgh,* 137 Pa.Cmwlth. 330, 586 A.2d 469 (1991) (*en banc* ), *appeal denied,* 527 Pa. 670, 593 A.2d 845 (1991), which quoted *Commonwealth ex rel. Elkin v. Moir,* 199 Pa. 534, 49 A. 351 (1901), to be controlling. Based thereon, the Commonwealth Court concluded:

> Binding precedent ... tell us that an elected municipal official has no right to hold office unless under the express protection of the Pennsylvania Constitution or the statute that purports to eliminate his office. Here, there is no provision in the Pennsylvania Constitution that protects the county elected office of jury commissioner from being eliminated by the legislature. Moreover, the only protection in Act 4 of 2013 afforded to jury commissioners in counties

that choose to eliminate the office is the provision that allows those elected officials to serve out the remainder of their term. We find no reason to afford a candidate for elective municipal office greater rights to hold that office than the law affords the current officeholder.

*Jury Commissioners I*, 74 A.3d at 342. Thus, the Commonwealth Court rejected Appellants' argument that Act 4 of 2013 violates their First Amendment right as candidates for the office of jury commissioner.

Appellants appealed to this Court, arguing that the Commonwealth Court erred in finding Act 4 of 2013 does not violate any of the constitutional provisions discussed *supra*. As the issues presented concern constitutional questions, our standard of review is *de novo* and our scope of review is plenary. *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 604 Pa. 267, 985 A.2d 1259 (2009).

## II. Arguments

Appellants' first and second arguments before this Court are, just as they were before the Commonwealth Court, intertwined. Specifically, Appellants continue to maintain Act 4 of 2013, which allows county commissioners to abolish the office of jury commissioner, permits the executive and legislative branch to infringe upon the judicial branch in violation of the Unified Judicial System and the separation of powers doctrine, and further constitutes an illegal delegation of legislative authority to the executive branch.

To begin, similar to the arguments they presented in the Commonwealth Court, Appellants point to statutory provisions in the Judicial Code, which provide a framework for the creation, operation, and functions of jury selection commissions, and assert that Act 4 of 2013 violates Article V of the Pennsylvania Constitution and the separation of powers doctrine by permitting the abolishment of a "purely judicial office." Appellants' Brief p. 32. That is, they contend the office of jury commissioner is "a vital part of the judiciary," which has existed since 1868 and has evolved into a judicial office, as evidenced by its codification in various provisions of

the Judicial Code, as opposed to The County Code. In fact, as they did in the Commonwealth Court, Appellants maintain the office of jury commissioner has been excluded from The County Code. To further support their position, they note the president judge of each county is the chairperson of the county's jury selection commission. Appellants assert that, in ruling that the office of jury commissioner is not part of the judicial system since the courts have no constitutional control over this statutorily-created office, and thus, the General Assembly was permitted to abolish the office, the Commonwealth Court failed to recognize the validity of Appellants' arguments.

Moreover, Appellants criticize the Commonwealth Court's application of *Olenginski, supra,* concluding such is not controlling in this case since *Olenginski, supra,* addressed whether a county prothonotary, as distinguished from the office of jury commissioner, was a member of the judiciary. In any event, Appellants note this Court is not bound by *Olenginski, supra* since it is a three judge panel decision by an intermediate court.

Appellants continue to rely on *Snyder, supra,* and *Wajert, supra,* for the proposition that the Pennsylvania Constitution provides this Court with sole authority for the general supervision of the courts, and additionally cite to *Commonwealth v. Stern,* 549 Pa. 505, 701 A.2d 568 (1997), and *Pa. State Ass'n of County Comm'rs v. Commonwealth,* 545 Pa. 324, 681 A.2d 699 (1996), to further support this proposition. Based thereon, they emphatically argue this Court's constitutional authority to supervise the courts extends to the office of jury commissioner, and the Commonwealth Court erred in holding otherwise. Moreover, they maintain this Court has been moving towards a unified judicial system, and "[i]t is hard to imagine a greater impairment than the current abolishment of a purely judicial function[.]" Appellants' Brief p. 43. *See Pa. State Assoc. of County Comm'rs v. Commonwealth,* 545 Pa. 324, 332, 681 A.2d 699, 703 (1996) ("[T]he destruction of one branch of government by another would be antithetical to the constitutional scheme of separation of powers, any legislative action

which impairs the independence of the judiciary in its exercise of the judicial power and the administration of justice would be similarly abhorrent.") (quotation omitted).

Moreover, Appellants specifically aver that, by enacting Act 4 of 2013, the legislature improperly delegated an "important judicial function" to each county executive branch without any guidance or standards to restrain the exercise of the delegated functions. Appellants posit "Act 4 of 2013 does not define who is responsible for the future jury selection process if the county commissioners abolish the office of jury commissioner," and they suggest "[t]here could be fifty different jury selection processes created" since "each county might develop a different jury selection system." Appellants' Brief pp. 19, 21. In this vein, Appellants specifically criticize the Commonwealth Court's holding that Act 4 of 2013 authorizes only the elimination of the two elected jury commissioners, leaving the president judge as the sole remaining member of the county jury selection committee. To the contrary, Appellants assert, Act 4 of 2013, by its clear language, permitted county commissioners to eliminate the entire office of jury commissioner, and not simply the two elected jury commissioners, without indicating any replacement for or standards to guide those who attempt to exercise the delegated functions. Appellants express concern that Act 4 of 2013, as interpreted by the Commonwealth Court, will do "nothing to safeguard the [jury] system itself or to prevent political or other influence [and] would undercut any future hope for a unified jury system[.]" Appellants' Brief at 23–24.

In their final argument before this Court, Appellants continue to maintain that Act 4 of 2013 violates the First Amendment rights of candidates on the ballot for election to the post of jury commissioner in the upcoming 2013 Municipal Election. Specifically, they argue these candidates have spent substantial time and effort to campaign for the office, win the primary election, and have their names placed on the general election ballot in 2013. Regarding this issue, they urge this Court to adopt the rationale of *Campbell, supra,* and reject the Commonwealth Court's reliance on *Lyons, supra.*

Appellees,[14] on the other hand, maintain the Commonwealth Court correctly concluded the office of jury commissioner is a statutorily-created office, thereby properly rejecting Appellants' central argument that the office of judicial commissioner is a "judicial office." Specifically, Appellees credit the Commonwealth Court's rejection of Appellants' claim the office of jury commissioner has "evolved" into a judicial office, and they support the Commonwealth Court's analysis as it relates to an examination of the Judicial Code and The County Code. Appellees specifically suggest the clear language of the Judicial Code does not support Appellants' contention that the office of jury commissioner is a "judicial office" and the office is not excluded from The County Code.

They further argue the Commonwealth Court's analysis is consistent with this Court's precedent, which indicates that jury commissioners are county staff and, thus, not part of the unified judicial system subject to the supervisory authority of this Court. *See Beckert, supra.* Appellees credit the Commonwealth Court's reliance upon *Olenginski, supra,* and *In re Administrative Order No. 1–MD–2003,* for the proposition that there is a lack of reference in the Pennsylvania Constitution to jury commissioners being "judicial officers," and in fact, the Pennsylvania Constitution supports the conclusion they are "county officers." Consequently, Appellees urge this Court to find the Commonwealth Court properly concluded the elected office of jury commissioner is neither one of rulemaking by this Court nor one enumerated in and thus afforded special protection under the Pennsylvania Constitution such that the office, which was created by statute, could be abolished by the legislature in its wisdom. That is, noting the heavy burden upon Appellants and the precept that there is a

14. Appellees, the Commonwealth, the Governor, the Attorney General and the Secretary of the Commonwealth, filed a joint brief, while Appellees, the President *Pro Tempore* of the Pennsylvania Senate and the Pennsylvania Speaker of the House of Representatives, filed a joint brief. The Intervenor/Appellee, the County Commissioners Association, filed its own brief. Though not identical, the arguments forwarded by the Appellees and the Intervenor/Appellee are similar and overlapping; accordingly, for ease of disposition, we shall address their arguments collectively as Appellees' arguments.

strong presumption that legislative enactments do not violate the Constitution, Appellees aver the Commonwealth Court properly rejected Appellants' claim Act 4 of 2013 violates the separation of powers doctrine and Article V of the Pennsylvania Constitution establishing a unified judicial system. *Stilp v. Commonwealth*, 588 Pa. 539, 575, 905 A.2d 918, 939 (2006) ("[A] party challenging the constitutionality of a statute bears a very heavy burden of persuasion.") (citation omitted); *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 292, 877 A.2d 383, 393 (2005) ("[O]ur case law makes clear that there is a strong presumption in the law that legislative enactments do not violate our Constitution.") (citation omitted).

Moreover, Appellees argue the Commonwealth Court properly rejected Appellants' claim Act 4 of 2013 constitutes an improper delegation of legislative authority to the executive branch. Appellees aver the Commonwealth Court properly held Act 4 of 2013 does not authorize the elimination of the jury selection commission as a body, the enactment of a local law stripping from the jury selection commission the powers and duties conferred on the commission by the Judicial Code, or permit a county to opt out of the procedures for the compilation and maintenance of potential juror lists set forth in the Judicial Code. That is, they urge this Court to find the Commonwealth Court correctly concluded that Act 4 of 2013 merely permits the abolishment of the two elected positions on the jury selection commission, thereby leaving the president judge as the sole member of the county jury selection commission. *See* 42 Pa.C.S. § 2124. They contend that, as the Commonwealth Court concluded, the president judge will continue to compile lists of potential jurors in a manner consistent with the Judicial Code, and therefore, there was no improper delegation of power.[15]

15. They also present an alternate argument that, even if Act 4 of 2013 eliminated the entire jury selection commission, as alleged by Appellants, Act 4 of 2013 does not constitute an improper delegation of authority to a county's governing body since Act 4 of 2013 provides there can be no abolishment of the office of jury commissioner until "[a]fter review of the procedures in effect within the county to ensure

Finally, Appellees maintain the Commonwealth Court properly concluded Act 4 of 2013 does not violate the First Amendment as it relates to candidates on the ballot for election to the post of jury commissioner in the upcoming 2013 Municipal Election. Appellees posit the Commonwealth Court correctly found *Lyons, supra,* relying upon *Moir,* as opposed to *Campbell, supra,* to be controlling on this issue. They further note other prior decisions by this Court support the Commonwealth Court's conclusion that a candidate or holder of an elected office has no individual right to the office such that Act 4 of 2013 does not violate the First Amendment rights of candidates for the office of jury commissioner. *See In re 1991 Pa. Legislative Reapportionment Comm'n,* 530 Pa. 335, 353, 609 A.2d 132, 141 (1992) ("[E]lected officials' interest in their office does not merit constitutional protection.") (quotation omitted); *Sweeney v. Tucker,* 473 Pa. 493, 524, 375 A.2d 698, 713 (1977) ("An elected office is a public trust, not the private domain of the officeholder.").

## III. Discussion

 Upon our review, and for the reasons more fully discussed *infra,* we agree with the Commonwealth Court that Act 4 of 2013 is constitutional with regard to the challenges forwarded here. Since we are called upon to consider constitutional challenges to a legislative enactment, there are certain guidelines that must govern our review.

We note at the outset that it is a fundamental principle in our conception of judicial authority that courts are not to inquire into the wisdom, reason or expediency behind a legislative enactment. Nor are the motives of the legislators in passing the act open to judicial consideration. Our inquiry in such cases can only be directed to the manner in which the legislature effectuates its will, to insure [*sic* ] that

that lists of potential jurors are a representative cross section of the community." Thus, Appellees suggest, the legislature set forth proper standards and procedures in this regard. *See Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975) (indicating that, in determining whether adequate standards have been set forth, we examine the entire Act).

the enactment does not transgress some specific constitutional prohibition.

*Young v. Commonwealth Bd. of Probation and Parole,* 487 Pa. 428, 431, 409 A.2d 843, 845 (1979) (citations omitted).

 The standards we apply in making this determination are well-settled.

When faced with any constitutional challenge to legislation, we proceed to our task by presuming constitutionality in part because there exists a judicial presumption that our sister branches take seriously their constitutional oaths. *See* 1 Pa.C.S. § 1922(3) ('In ascertaining the intention of the General Assembly in the enactment of a statute ... the presumption [is] [t]hat the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.')[.] Indeed, a legislative enactment will not be deemed unconstitutional unless it clearly, palpably, and plainly violates the Constitution. 'Any doubts are to be resolved in favor of a finding of constitutionality.' *Payne v. Dept. of Corrections,* 582 Pa. 375, 871 A.2d 795, 800 (2005). Accordingly, a party challenging the constitutionality of a statute bears a very heavy burden of persuasion. *See Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162, 165 (1996). In cases where this Court is asked to construe provisions of the Pennsylvania Constitution, 'the fundamental rule of construction which guides [the Court] is that the Constitution's language controls and must be interpreted in its popular sense, as understood by the people when they voted on its adoption.' *Ieropoli v. AC & S Corp.,* 577 Pa. 138, 842 A.2d 919, 925 (2004). Our ultimate touchstone is the actual language of the Constitution itself.

*Stilp,* 588 Pa. at 573–74, 905 A.2d at 938–39 (citations omitted).

 Initially, we hold Act 4 of 2013 does not violate the separation of powers doctrine as embodied within Article V, Sections 1 and 10 of the Pennsylvania Constitution establishing a unified judicial system. The notion of the inherent power of the judiciary is implicit in the doctrine of separation

of powers. *Beckert, supra.* We have discussed this fundamental doctrine as follows:

A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government. The dividing lines among the three branches 'are sometimes indistinct and are probably incapable of any precise definition.' Under the principle of separation of powers of government, however, no branch should exercise the functions exclusively committed to another branch.

The allocation of these governmental powers to three distinct branches averts the danger inherent in the concentration of absolute power in a single body:

The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny.

*Beckert,* 497 Pa. at 144–45, 439 A.2d at 642 (citations and quotations omitted). Thus, "[u]nder the separation of powers doctrine, the legislature may not exercise any power specifically entrusted to the judiciary." *Court of Common Pleas of Erie v. PHRC,* 546 Pa. 4, 682 A.2d 1246, 1247 (1996) (citation omitted). This Court has held we have the sole power and the responsibility to supervise the "practice, procedure, and the conduct of all courts," and neither the legislative branch nor the executive branch of government may constitutionally infringe on this judicial prerogative. *First Judicial District of Pa. v. PHRC,* 556 Pa. 258, 727 A.2d 1110 (1999).

This Court has integrated, to some extent, the separation of powers doctrine and Article V of the Pennsylvania Constitution, which establishes a unified judicial system supervised by this Court and vests the judiciary with the power to administer justice. *See Jefferson County Court Appointed Employees Ass'n v. PLRB,* 603 Pa. 482, 985 A.2d 697 (2009). "The judicial branch's right to hire, fire, and supervise its employees is derived from that constitutional source." *Jefferson County Court Appointed Employees Ass'n,* 603 Pa. at 498, 985 A.2d at 707 (quotation, quotation marks,

and citations omitted). The judiciary's authority over court personnel is essential to the maintenance of an independent judiciary. *County of Lehigh v. PLRB*, 507 Pa. 270, 489 A.2d 1325 (1985). Thus, under this doctrine, this Court may invalidate statutory provisions, which intrude on our judicial prerogative to regulate, among other things, "judicial officers." *See Commonwealth v. Mockaitis*, 575 Pa. 5, 24–25, 834 A.2d 488, 499–500 (2003) (holding this Court has supervisory powers over its employees, and "[t]his Court has not hesitated to strike down legislation that clearly violates the separation of powers doctrine.") (citations omitted); *Snyder, supra* (holding that legislative attempt to authorize political activity by court employees was an unconstitutional infringement upon the Supreme Court's exclusive constitutional mandate to administrate all courts and supervise all officers of the judicial branch); *Wajert, supra* (finding then applicable State Ethics Act, which prohibited trial court judge from representing client within one year of resignation, was unconstitutional as applied to former judge since the regulation infringed upon this Court's exclusive power to govern the conduct of an attorney).

Concomitantly, while legislative action impairing the independence of the judiciary in its administration of justice violates the separation of powers, the corollary is that judicial action infringing on the legislative function also violates the separation of powers. *Jefferson County Court Appointed Employees Ass'n, supra.* "The legislative power is the power to 'make, alter, and repeal laws.'" *Jubelirer v. Rendell*, 598 Pa. 16, 41, 953 A.2d 514, 529 (2008) (quoting *Blackwell v. State Ethics Comm'n*, 523 Pa. 347, 567 A.2d 630, 636 (1989)) (other quotations omitted).

Appellants reason that the office of jury commissioner is a "judicial office," initiated and implemented by this Court in the Judicial Code, as opposed to a "county office," initiated and implemented by the General Assembly in The County Code, and thus, Act 4 of 2013, through which the legislature permits counties' governing bodies to abolish the office of jury commissioner, is an unconstitutional infringement upon this

Court's exclusive authority to supervise all officers of the judicial branch. Applying the well-settled principles of statutory construction, we reject the premise that the office of jury commissioner is a "judicial office" under the Judicial Code or that the office has been excluded from The County Code. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."); 1 Pa.C.S. § 1924 ("The title and preamble of a statute may be considered in the construction thereof ... The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof.").

We begin with an examination of Chapter 21 of the Judicial Code, which relates to "Judicial Boards and Commissions," and in particular, sets forth, in Subchapter C, the composition of "Jury Selection Commissions." Subchapter C, Section 2121, provides " ... the jury selection commission in each county shall consist of three persons selected as provided in this subchapter or as provided by home rule charter." 42 Pa.C.S. § 2121. Expanding upon Section 2121, Section 2122 sets forth the composition of jury selection commissions, providing, in relevant part, the following:

§ 2122. Composition of jury selection commissions

(a) **General rule.**-Except in the first judicial district and other home rule charter counties, the jury selection commission shall consist of two jury commissioners elected as provided in this section and the president judge of the court of common pleas of the judicial district embracing the county. The president judge may from time to time assign another judge of court to perform his duties temporarily. The president judge or his assigned replacement shall be chairman.

(b) **Election of commissioners**-The jury commissioners shall be elected as provided in this subsection and, to the extent not inconsistent with this subsection, as provided by the act of July 28, 1953 (P.L. 723, No. 230), known as the "Second Class County Code" and the act of August 9, 1955

(P.L. 323, No. 130), known as "The County Code," as the case may be, and the act of June 3, 1937 (P.L. 1333, No. 320), known as the "Pennsylvania Election Code."... The two persons elected as jury commissioners shall not be of the same political party.

* * *

42 Pa.C.S. § 2122(a), (b) (bold in original) (footnotes omitted). Thus, under the clear language of the Judicial Code, jury selection commissions are comprised of two elected jury commissioners, who are not from the same political party, and the county's president judge, or another judge of court to whom he has temporarily assigned his duties, who serves as the chairman of the commission. *See* 1 Pa.C.S. § 1921(b).

In determining whether any of the three members of jury selection commissions are "judicial officers," we look to Section 102 of the Judicial Code, which provides, by its plain text, that only "[j]udges, magisterial district judges and appointive judicial officers" are "judicial officers." 42 Pa.C.S. § 102. Clearly, while the president judge (or another judge of court to whom he may have temporarily assigned his duties) meets the definition of "judicial officer," the two elected jury commissioners do not meet this definition. Instead, we find the two elected jury commissioners meet the Judicial Code's definition of "county staff," which include "[s]ystem and related personnel elected by the electorate of a county or subject to appointment and removal by officers, other than judicial officers, so elected. The term does not include judicial officers." 42 Pa.C.S. § 102.

Moreover, we find the two elected jury commissioners are not excluded from The County Code. Article IV of The County Code, which relates to "County Officers," provides in Section 401 that "[i]n each county, there shall be the following officers elected by the qualified electors of the county ... (12) Two jury commissioners." 16 P.S. § 401(12). Furthermore, Article IV of The County Code provides, in Section 440, that certain county officers of each county may organize themselves into a State association, and specifically lists "[j]ury commissioners" as such county officers. 16 P.S. § 440(12).

Finally, it is noteworthy that Act 4 of 2013, amended, by its plain terms, "The County Code," and included subparagraph (f) under Section 401 regarding the abolishment of the officer of jury commissioners.

Similarly, just as there is no statutory support for the premise the two elected jury commissioners are "judicial officers," we find no constitutional support for the premise. Whereas Article V, Section 1 of the Pennsylvania Constitution sets forth the "judicial power" vested in the "unified judicial system," Article IX, Section 4 of the Pennsylvania Constitution, pertaining to county government, provides, in relevant part: "County officers shall consist of commissioners, controllers, or auditors, district attorneys, public defenders, treasurers, sheriffs, registers of wills, recorders of deeds, prothonotaries, clerks of the courts, and such others as may from time to time be provided by law." Pa. Const. art. IX, § 4. Though the two elected jury commissioners are not expressly listed, they are, by virtue of The County Code, "county officers" "from time to time" provided by law. *See Perry County Telephone & Telegraph v. Public Service Comm'n*, 265 Pa. 274, 108 A. 659 (1919) (indicating the general principles of statutory interpretation also applies to the interpretation of the Constitution).

Despite the clear statutory and Pennsylvania constitutional language indicating that the two elected jury commissioners are not "judicial officers," but rather "county officers," Appellants assert that the office of jury commissioner has "evolved" into a judicial office carrying out "key" roles in our court system. However, the fact the elected jury commissioners cooperate, by statute, with the president judge (or another county judge temporarily) does not convert the nature of the offices. Our organic law does not evolve in such a fashion. For instance, in *Beckert, supra,* this Court, noting "[a] striking feature of this Commonwealth's judicial system at the county level is the court-county cooperation mandated by statute," found "[a] significant proportion of the personnel involved in the operation of a county judicial system is neither appointed nor supervised by the judges of a court of common pleas."

*Beckert,* 497 Pa. at 148, 439 A.2d at 644. These employees, which constitute "county staff," include "jury commissioners." *Id.* We specifically noted in *Beckert, supra,* that "[t]he provision of the Judicial Code which gives this Court general supervisory and administrative authority over the personnel of the (unified judicial) system specifically excludes county staff[.]" *Id.* (quotation and quotation marks omitted). *See In re Administrative Order No. 1–MD–2003, supra* (holding clerks of courts, while performing important functions, are purely ministerial, having no judicial powers); *Olenginski, supra* (relying upon *In re Administrative Order No. 1–MD–2003* and holding that a prothonotary of a common pleas court is a "county officer," not a "judicial officer").[16]

Thus, having concluded the two elected jury commissioners are not "judicial officers," but rather statutorily-created "county staff," we find Act 4 of 2013, through which the legislature permits the abolishment of the two elected jury commissioners, does not violate the separation of powers doctrine or Article V of the Pennsylvania Constitution.[17] While we agree with Appellants that "juries play a vital part in the judicial system," we simply disagree that the office of jury commissioner is a "judicial office" or that Act 4 of 2013 permits the improper "abolishment of what is a purely judicial office."

We next hold that Act 4 of 2013 does not constitute an improper delegation of legislative authority under

16. Appellants correctly argue that we are not bound by the Commonwealth Court's decision in *Olenginski, supra;* however, we find it to be persuasive. *Six L's Packing Co. v. W.C.A.B. (Williamson),* 615 Pa. 615, 44 A.3d 1148 (2012) (holding decisions of the intermediate courts have no binding effect upon the Supreme Court).

17. Appellants' reliance upon *Stern, supra,* and *Pa. State Ass'n of County Comm'rs, supra,* for the proposition that the office of jury commissioner is a "judicial office" subject to our exclusive authority is misplaced. In *Stern,* we found unconstitutional a statute, which criminalized the practice of attorneys paying for referrals, on the basis that the statute violated the separation of powers doctrine and Article V of the Pennsylvania Constitution. In *Pa. State Ass'n of County Comm'rs,* we ordered the General Assembly to enact a constitutional statutory scheme for county funding of the judicial system in order to comply with a former order of the Superior Court. Both cases are clearly distinguishable from the matter at hand and require no further discussion.

Article II, Section 1 of the Pennsylvania Constitution. In so holding, we note:

> The "legislative power" in its most pristine form is the power "to make, alter and repeal laws." It is *axiomatic* that the legislature cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority. The legislature may, consistent with this constitutional axiom, delegate authority and discretion in connection with the execution and administration of a law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the enabling legislation.

> While the General Assembly may, with adequate standards and guidelines, constitutionally delegate the power and authority to execute or administer a law, the prohibition against delegation of "legislative power" requires that the *basic policy choices* be made by the General Assembly.

*Pennsylvanians Against Gambling Expansion Fund,* 583 Pa. at 331, 877 A.2d at 416–17 (quotation omitted) (emphasis in original). *See Ins. Fed. of Pa., Inc. v. Dep't of Ins.,* 585 Pa. 630, 889 A.2d 550 (2005). To determine whether the General Assembly has established adequate standards, this Court must look to the language of the statute, the underlying purpose of the statute, and its reasonable effect. *Blackwell, supra.*

In suggesting Act 4 of 2013 unlawfully delegates to the governing bodies of counties the power to abolish the office of jury commissioner without sufficient guidance and standards, Appellants have misconstrued Act 4 of 2013. As indicated in our discussion *supra,* Chapter 21 of the Judicial Code, Subchapter C, provides that jury selection commissions consist of three people, including two elected jury commissioners and the county's president judge (or another judge of court temporarily assigned to perform his duties), who is the chairman. 42 Pa.C.S. §§ 2121, 2122. The Judicial Code further provides that all of the powers and duties lie within jury selection commissions as a body. Specifically, Section 2124 provides, "[e]ach jury selection commission shall exercise the powers

and perform the duties vested in and imposed upon such commissions by Subchapter B of Chapter 45 (relating to selection and custody of jurors) and any other powers and duties vested in and imposed upon such commissions by law." 42 Pa.C.S. § 2124. Furthermore, Section 2122 provides a jury selection commission has a quorum and "may act by a majority of its members." 42 Pa.C.S. § 2122(e). Act 4 of 2013, as suggested by our discussion *supra,* permits the governing authority of a county subject to the law to eliminate the two elected jury commissioners, leaving the president judge (or another judge of court temporarily assigned his duties) as the sole remaining member of the jury selection commission. We agree with the Commonwealth Court that Act 4 of 2013 does not eliminate the jury selection commission as a body, does not permit local laws stripping from jury selection commissions the powers and duties conferred on the commission by Section 2124 of the Judicial Code, and does not authorize counties to opt out of the duties vested and imposed upon the commissions by Subchapter B of Chapter 45 of the Judicial Code (relating to selection and custody of jurors). Thus, for a county where the governing body elects to eliminate the elected office of jury commissioner, the president judge (or another judge of court temporarily assigned to perform his duties) will ensure that the county continues to compile lists of potential jurors in a manner consistent with the Judicial Code.[18] On this issue, we simply find no merit to Appellants' expressed concern that Act 4 of 2013 will do "nothing to safeguard the [jury] system itself or to prevent political or other influence [and] would undercut any future hope for a unified [judicial] system[.]" Appellants' Brief pp. 23–24.

Finally, we hold Act 4 of 2013 does not violate the First Amendment rights of candidates on the ballot for election to the post of jury commissioner in the upcoming 2013 Municipal Election. Though Appellants contend the candidates have "a First Amendment right since these [candidates] have spent substantial time and effort to campaign for the

18. We find it unnecessary to address Appellees' alternate argument on this issue. *See* p. 19 n. 15, *supra.*

office, win the primary election, and to have their names placed on the general election ballot in 2013," and thus "these offices cannot be abolished, at least until the term of these offices expire after the election cycle is completed[,]" they have cited no binding authority in this regard. *See* Appellants' Brief p. 48.

Appellants cite to the United States District Court of Connecticut's decision in *Campbell, supra;* however, we agree with the Commonwealth Court that the decision is non-binding and, in any event, does not address the issue at hand. *See Commonwealth v. Sam,* 597 Pa. 523, 952 A.2d 565 (2008) (indicating lower court federal authority is non-binding upon this Court). The issue in *Campbell* related to ballot access; namely, the federal district court struck down as an impermissible burden on First Amendment speech and association a statute, which required persons circulating a nominating petition to be an eligible voter in the primary election for the candidate in question and required a person seeking a party's nomination in a primary to secure support from 15% of that party's delegates at a convention before the person may appear on the primary ballot. *See id.* As Appellants admit in their argument, the jury commissioners at issue here are already on the ballot. That is, they have not claimed that Act 4 of 2013 regulates how a person runs for the office of jury commissioner or otherwise affects ballot access. Thus, *Campbell, supra,* is not instructive.

Appellants' ostensible claim is that their First Amendment rights have been violated. But, the harm Appellants suggest is to property, as they argue that the candidates for jury commissioner have spent time and effort to campaign for the office during the primary they won and in anticipation of the general election. Appellants fail to explain how it is that such harm falls within the ambit of First Amendment protections and the linkage is not self-evident. Rather, Appellants' reliance argument suggests a due process claim. In *Sweeney, supra,* and *In re 1991 Pa. Legislative Reapportionment Comm'n, supra,* this Court addressed due process claims similar to these and rejected the claim of a property interest

in elected positions. We see no reason to depart from these holdings where, as here, Appellants argue for the constitutional protection of a property interest in their presence on the ballot in the November 2013 general election premised upon success in the primaries and financial investments by the candidates in anticipation of the election.

We find this Court's prior decisions to be instructive and hold that a candidate for or holder of an elected office has no individual right to the office such that Act 4 of 2013 does not violate the First Amendment rights of candidates on the ballot for election to the post of jury commissioner in the upcoming 2013 Municipal Election. For instance, in *Sweeney, supra*, we examined the claim of Leonard A. Sweeney (who the Pennsylvania House of Representatives expelled in 1975 from membership in the House) that he had a property interest in his House seat such that he was protected by the due process clause. In rejecting Mr. Sweeney's claim that he demonstrated a legitimate property interest, this Court stated, in relevant part, the following:

> An elected office is a public trust, not the private domain of the officeholder. A member of the [l]egislature has a profound responsibility to represent his constituents in the formulation of public policy in this state. He holds office for the benefit of his constituents and cannot justifiably rely on a private need or expectation in holding office. He is periodically accountable to his constituents through the electoral process.... A member of the [l]egislature is thus subject to the political process at all times. This is properly so for the public interest in the office far outweighs any private interest of the officeholder. An elected official can never have tenure in the same sense as an ordinary public employee.

*Sweeney,* 473 Pa. at 524, 375 A.2d at 713 (citation omitted).

Subsequently, in *In re 1991 Pa. Legislative Reapportionment Comm'n, supra,* we examined, in the context of legislative reapportionment, Pennsylvania Senators' claims that they had constitutionally protected interests in their Senate seats. Applying this Court's holding in *Sweeney,* we concluded "elect-

ed officials' interest in their offices does not merit constitutional protection." *In re 1991 Pa. Legislative Reapportionment Comm'n,* 530 Pa. at 353, 609 A.2d at 141 (citations omitted). *See Commonwealth v. Moir,* 199 Pa. 534, [548], 49 A. 351, [355] (1901) ("There is no right to public office unless it is under the express protection of the constitution, and such protection is nowhere given to municipal officers."); *Lyons v. City of Pittsburgh,* 137 Pa.Cmwlth. 330, 586 A.2d 469 (1991) (*en banc* ), *allocatur denied,* 527 Pa. 670, 593 A.2d 845 (1991) (relying upon *Moir* and holding city council member who lost his council seat prior to expiration of his term because of amendment to home rule charter which provided for district elections of council members instead of at-large election had no constitutional right to continue in office).

We, likewise, conclude in this case that candidates on the ballot for election to the post of jury commissioner in the upcoming 2013 Municipal Election have no constitutionally protected interest in their seats such that they have not established Act 4 of 2013, through which their offices may be abolished, violates the First Amendment.

## IV. Conclusion

For all of the aforementioned reasons, we conclude the Commonwealth Court did not err in rejecting Appellants' constitutional challenges to Act 4 of 2013. In particular, we find Act 4 of 2013 does not violate the separation of powers doctrine as embodied within Article V, Sections 1 and 10 of the Pennsylvania Constitution, does not constitute an improper delegation of legislative authority in violation of Article II, Section 1 of the Pennsylvania Constitution, and does not violate the First Amendment of the United States Constitution. Thus, and as previously directed by our September 17, 2013, *per curiam* order, we affirm the Commonwealth Court's order.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER and McCAFFERY join the opinion.

Justice TODD files a Dissenting Opinion.

Justice TODD, dissenting.

I respectfully dissent. While it is indisputable that the legislature may abolish government offices which it has statutorily created, the legislation accomplishing that purpose must, nevertheless, comport with the Pennsylvania Constitution. In my view, Act 4 of 2013 does not do so, as I deem meritorious Appellants' claim that it violates Article II, Section 1 of the Pennsylvania Constitution because it constitutes an impermissible delegation of legislative power to counties regarding the conduct of a vital part of the operation of our unified judicial system—the jury selection process. In my view, Act 4 is constitutionally infirm because it *sub silentio* permits counties,[1] through the abolition of the office of jury commissioner, to effectively supersede the comprehensive provisions of the Judicial Code which currently govern the jury selection process, while providing no guiding standards to those counties on how they are to carry out the jury selection process after abolition. Further, I consider Act 4 to deleteriously effect the administration of our unified judicial system by substituting the current uniform statutory framework for selecting jurors with a vast and possibly conflicting patchwork of local, *ad hoc* standards, which may ultimately be as varied as the number of counties in our Commonwealth. I would, therefore, reverse the order of the Commonwealth Court denying Appellants summary relief or, alternatively, pursuant to our supervisory authority over the Pennsylvania Unified Judicial System, promulgate specific rules of procedure to ensure that jury selection procedures remain uniform throughout the Commonwealth.

As recognized by the majority, the Judicial Code specifies that the two jury commissioners for each county do not carry out their myriad duties for effectuating the jury selection process in an individual capacity, but they are authorized to do so only as members of a three-person jury selection commission on which the president judge of the judicial district

1. As Act 4 specifically pertains only to second class A, and third through eighth class counties, I use the term county in reference to those counties.

covering that county is also a member. *See* 42 Pa.C.S.A. § 2122(a) ("[T]he jury selection commission shall consist of two jury commissioners elected as provided in this section and the president judge of the court of common pleas of the judicial district embracing the county."); *id.* § 4521(a)(1) (specifying that "the jury selection commission shall prepare a master list of prospective jurors"); *id.* § 4521(c) (specifying that "the commission shall select at random from the master list of prospective jurors the number of names designated by the president judge pursuant to court orders [requiring jurors to appear for service]"); *id.* § 4521(d) & (f) (requiring "the commission" to mail juror qualification forms to prospective jurors and authorizing "the commission" to apply to the court of common pleas to order prospective jurors to fill out the qualification forms); *id.* § 4522 (requiring "the commission" to determine whether prospective jurors are qualified for jury service and to compile and maintain for public inspection master lists of jurors who are qualified and disqualified for jury service).

Indeed, certain relevant provisions of the Judicial Code specifying the duties of the jury selection commission, as written, cannot be reasonably construed as contemplating that those duties be performed by the president judge acting alone in the dual capacity of both the "commission" and the court of common pleas. Rather, these statutes demarcate a clear division between the commission's duties as an independent body and the separate responsibilities of the court of common pleas. *See* 42 Pa.C.S.A. § 4521(f) ("On application by the commission, the court shall compel compliance with subsections (a)(2), (3) and (4) and (d)."); *id.* § 4524, (providing that "[u]pon receipt of a court order pursuant to section 4531 (relating to issuance of court orders for jurors), the commission shall publicly select at random from the master list or jury wheel such number of names of persons as may be required to be summoned for assignment to jury arrays," and also requiring that the array be made available at the offices of "the commission" for inspection at least 30 days prior to the first day on which jurors in the array are eligible to serve at a

trial); *id.* § 4531 (providing that orders of the court directing the jury selection commission to select a jury array from the master list shall be issued in conformance with general rules of court); *id.* § 4532 (specifying that "jurors shall be summoned to serve in a manner determined by the jury selection commission with the concurrence of the president judge.").

Critically, I note that the Judicial Code also sets a minimum quorum requirement in order for the jury selection commission to take any action—namely, "a majority of its members." *See* 42 Pa.C.S.A. § 2122(e) ("**Quorum.**—A jury selection commission may act by a majority of its members."). Since each jury commission is **required** by 42 Pa.C.S.A. § 2122(a) to have three members—a statutory provision that Act 4 did not amend—it may, therefore, act only if two of the three members of the commission authorize the action. If a county's jury commission ceases to have the requisite three members, because the county has chosen to abolish the two jury commissioners, then, by the plain language of these statutes, the commission is no longer authorized to take any action. Consequently, when a county officially abolishes the office of jury commissioner it is also, in actual effect, eviscerating the jury selection commission as a functional body and depriving it of continuing authority to take any action, which includes performance of the aforementioned duties.

The majority correctly observes that Act 4 did not explicitly abolish the jury commission as a body; however, it also did not repeal or amend any of the aforementioned statutes setting forth the minimum required number of members, or eliminate the statutory requirement that the commission carry out its duties in the jury selection process while acting as a whole. While the majority acknowledges that Act 4 does not alter the statutory requirements setting forth the structure and operation of jury commissions in counties which abolish the office of jury commissioner, the majority nevertheless assures that, after abolishment, the president judge of the judicial district covering the county may, as the sole remaining member of the jury commission, single-handedly carry on at least some of its duties. *See* Majority Opinion at 388, 78 A.3d

at 1036 ("[F]or a county where the governing body elects to eliminate the elected office of jury commissioner, the president judge ... will ensure that the county continues to compile lists of potential jurors in a manner consistent with the Judicial Code."). I have no doubt that president judges, who are all very able jurists, are capable of performing such a task, if provided with sufficient administrative and budgetary resources such an undertaking could require. Nevertheless, I respectfully submit that this consideration is irrelevant as there is simply no language in the above-referenced statutes governing the structure and operation of jury commissions which permits the president judge of the judicial district covering a county which has abolished its jury commissioners to act as "a jury commission of one." Rather, the president judge is strictly limited by those statutes to act as a **member** of a three person commission.

Further, when the jury commission functions as a three member body, the president judge is not solely responsible for the selection of the members of the jury pool which will be utilized for trials over which he or she may preside. Under those circumstances, the selection process is jointly conducted by all three members of the commission, which, as Appellants point out, was explicitly structured at its inception to give the public confidence that the jury selection process was not within the exclusive purview of any one governmental official. If the commission were to operate with only one member, this would defeat that laudatory purpose, and it would place the president judge in the unenviable position of being **solely** responsible for selecting the very jurors who will hear cases in his or her courtroom. This is not, in my view, a position he or she should be involuntarily forced to assume, since, under 42 Pa.C.S.A. § 4526, any challenge by a party to a juror array, which will now be selected at the exclusive direction of the president judge, must be heard by his or her court.

Moreover, as Appellants point out, Act 4 provides no corresponding guidance or standards regarding which person or entity will thereafter be responsible for performing the duties of the jury selection commission, or how the jury selection

process is to transpire—i.e., whether a newly designated individual or entity must follow the procedures set forth in 42 Pa.C.S.A. §§ 4521–4532. The sparse language of Act 4 merely requires county commissioners, prior to abolition of the office of jury commissioner, to conduct a one-time "review of the procedures in effect within the county to ensure that lists of potential jurors are a representative cross section of the community." 16 P.S. § 401(f). Act 4 does not otherwise specify which "lists" the county commissioners are to review, does not oblige the county commissioners to further maintain those lists, nor, critically, does not contain any requirement that, after their one-time review, the county commissioners must continue to maintain the very procedures which they have concluded resulted in a representative pool of jurors. I regard such a wholesale, standardless delegation of the jury selection commission's statutory duties to county commissioners in this fashion to be a violation of Article II, Section 1 of the Pennsylvania Constitution.

As our Court reaffirmed in *Pennsylvanians Against Gambling Expansion Fund*, 583 Pa. 275, 877 A.2d 383 (2005) (*"PAGE"*), all enactments of the General Assembly must meet two fundamental requirements in order not to run afoul of Article II, Section I, namely: (1) the basic policy choices must be made by the legislature; and (2) the legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions. *Id.* at 418 (quoting *Gilligan v. P.H.R.C.*, 492 Pa. 92, 422 A.2d 487, 489 (1980)). Here, as discussed above, the only policy choice expressed by the legislature in Act 4 regarding the jury selection process is that county commissioners, before abolishing the office of jury commissioner, must conduct a one-time review of the existing procedures to ensure that the lists of prospective jurors are, at the time of that review, a representative cross section of the community. Act 4 provides no standards for the conduct of the other functions now performed by the jury commissioners as part of the jury selection commission, including the annual preparation of updated master juror lists using methods to secure the broadest possible

pool of prospective jurors from the community, maintenance of those lists, and the screening and summoning of prospective jurors. Indeed, Act 4 fails to provide any guidance for implementing an alternative method to carry on the duties of the jury selection commission after the office of jury commissioner is abolished. Act 4, therefore, meets neither of the *PAGE* requirements and, in my view, is violative of Article II, Section 1. *See PAGE* (striking provisions of the Gaming Act which permitted the Gaming Control Board to "consider" local zoning ordinances in deciding whether to issue a license since the act failed to provide adequate standards to govern how the board's consideration process should proceed). Accordingly, I would reverse the Commonwealth Court on this basis.

Furthermore, in failing to guide counties in the conduct of the jury selection process after abolishing their jury commissioners, and, thus, hobbling their jury commissions, Act 4 has, in my view, the potential to cause disruption to our Unified Judicial System and impedes our Court's ongoing objective to integrate and harmonize the operation of various court and court-related offices. I do not agree with Appellants' premise that the mere inclusion within the Judicial Code of the statutory provisions governing the office and duties of jury commissioners renders the office itself judicial in nature, and, as discussed by the majority, our Court has previously characterized jury commissioners as "county staff." *See* Majority Opinion at 384–86, 78 A.3d at 1034–35 (citing *Beckert v. Warren*, 497 Pa. 137, 439 A.2d 638, 644 (1981)). Nevertheless, I concur with Appellants' assertion that jury commissioners play a vital role in the juror selection process. As essential members of the jury commission, they, through the commission, bear primary responsibility for selecting the individuals who will be tasked with rendering ultimate factual determinations in all criminal and civil jury trials—a process integral to effectuating the fundamental constitutional guarantee of every individual to a fair trial by a jury of his or her peers. *See generally Commonwealth v. Ellison*, 588 Pa. 1, 902 A.2d 419, 423 (2006) (underscoring principle that the jury selection process is critical to preserving the right to an impartial jury). In fulfilling

this responsibility, they are required to exercise judgment regarding important matters such as assessing the necessary scope and breadth of the records to be used in the jury selection process to ensure a jury pool which is a representative cross section of the community, the qualifications of prospective jurors to serve, and their ability to serve. Thus, though the jury commissioners themselves are statutorily classified as county staff, the jury commission on which they serve ensures the proper functioning of the trial processes of our statewide Unified Judicial System.

Prior to the passage of Act 4, it could not be reasonably questioned that the jury selection commissions of this Commonwealth were required by the various provisions of the Judicial Code discussed above to adhere to the same basic minimum standards in the preparation of jury lists and the selection of jurors for civil and criminal trials. *See* 42 Pa. C.S.A. § 2121 (referring to required composition of jury commission in "each county"); *id.* § 2122 (allowing separate method of selection of jury commissions in Philadelphia, home rule counties, and all other counties); *id.* § 2124 ("Each jury selection commission shall exercise the powers and perform the duties vested in and imposed upon such commissions by Subchapter B of Chapter 45 (relating to selection and custody of jurors) and any other powers and duties vested in and imposed upon such commissions by law."). This statutory scheme established a reasonably standard jury selection methodology which assured that variances in jury selection procedures between counties were minimized—thereby ensuring an individual's fundamental right to a fair trial by an impartial jury of his or her peers. *Ellison, supra.* These provisions of the Judicial Code also secured the individual privacy of our citizenry by requiring that personal information which potential jurors submit as part of their questionnaires be strictly limited from public disclosure during the period of their service. *See* 42 Pa.C.S.A. § 4526(d) (prohibiting disclosure of "contents of any records or papers used by the jury commissioners or their clerks in connection with the selection process … until … all persons selected to serve as jurors … have

been discharged."). As Appellants note, however, Act 4 creates the very real possibility that each Pennsylvania county will substitute a jury selection process of its own creation after eliminating the office of jury commissioner. This raises the specter of a proliferation of divergent, and possibly inadequate, jury selection methods among the counties which have abolished the office.

The impact such a balkanization of the jury selection process would have on the conduct of civil and criminal trials, and on judicial administration, should be a matter of profound concern to our Court, particularly as we seek to achieve greater synchronicity in the administration of justice through the integration into the Unified Judicial System of various court related offices currently under the control of county government, pursuant to the broad framework outlined by former Justice Montemuro in his interim report prepared for our Court as a special master. *See generally Pennsylvania State Ass'n of County Comm'rs v. Commonwealth,* 52 A.3d 1213, 1223–24 (Pa.2012). For this reason, and because, as explained above, I deem Act 4 to have disrupted the continued ability of jury commissions to operate, I consider the implementation of Act 4 to implicate our Court's duty under the Pennsylvania Constitution to supervise the operation of the Unified Judicial System. *See* Pa. Const. art. V, § 10(a) ("The Supreme Court shall exercise general supervisory and administrative authority over all the courts."). Pursuant to our supervisory duty, in order to ensure uniformity of the jury selection procedure among all counties which abolish the office of jury commissioner, I would exercise our Court's rulemaking authority to promulgate specific rules governing the jury selection process to be followed in judicial districts covering all counties which choose to exercise the option of abolishment. Such clear and certain guidance by our Court is, in my view, necessary on a matter of such vital importance.[2]

**2.** Given my disposition of Appellants' first two issues, I need not address their third issue.