PENNSYLVANIA STATE ASSOCIATION OF JURY COMMISSIONERS, Larry A. Thompson, President, Pennsylvania State Association of Jury Commissioners, Martha S. Smith, Duly Elected Jury Commissioner of

Chester County, Mary Jane Dellafiora, Duly Elected Jury Commissioner of Indiana County, George Richard Zimmerman, Duly Elected Jury Commissioner of Washington County, Pamela L. Bisbing, Duly Elected Jury Commissioner of Monroe County, Clinton A. Bonetti, First Vice President of Pennsylvania State Association of Jury Commissioners and Duly Elected Jury Commissioner of Butler County, Richard L. Ward, Jr., Duly Elected Jury Commissioner of Columbia County, Kristen Gensel, Duly Elected Jury Commissioner of Columbia County, Joanne Cisco Olszewski, Duly Elected Jury Commissioner of Montgomery County, Donald Lee Dissinger, Duly Elected Jury Commissioner of Perry County, Judith L. Fisher, Duly Elected Jury Commissioner of Washington County, Sandra Oden Kellner, Duly Elected Jury Commissioner of Venango County, Doretta K. Mellott, Duly Elected Jury Commissioner of Fulton County, Glenn E. Ford, Duly Elected Jury Commissioner of Fulton County, Marjorie A. Wassmer, Duly Elected Jury Commissioner of Pike County, Gertrude Smith, Duly Elected Jury Commissioner of Pike County, Jerry Olson, Duly Elected Jury Commissioner of Elk County, Shelley L. Blythe, Duly Elected Jury Commissioner of Beaver County, Petitioners

v.

COMMONWEALTH of Pennsylvania c/o Attorney General of Pennsylvania, Honorable Thomas Corbett, Governor of Pennsylvania, Honorable Carol Aichele, Secretary of the Commonwealth of Pennsylvania, Honorable Kathleen Kane, Attorney General of

---

Pennsylvania, Honorable Joseph B. Scarnati, III, Elected President Pro Tempore of the Senate of the Commonwealth of Pennsylvania, Honorable Samuel H. Smith, Speaker of the House of Representatives of the Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 19, 2013.
Decided July 31, 2013.

Samuel C. Stretton, West Chester, for petitioners.

John B. Delone, Senior Deputy Attorney General, for respondents Thomas Corbett, Carol Aichele and Kathleen Kane.

Robert L. Knupp and Adam G. Klein, Harrisburg, for intervenor County Commissioners Association of Pennsylvania.

BEFORE: McGINLEY, Judge, BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge BROBSON.

In this original jurisdiction matter, the constitutionality of a law authorizing the governing body of certain counties to eliminate the elective office of jury commissioner is again being challenged. In *Pennsylvania State Association of Jury Commissioners v. Commonwealth,* —— Pa. ——, 64 A.3d 611 (2013) (*Jury Commissioners II*), the Pennsylvania Supreme Court held that Act 108 of 2011 [1] violated the "single subject rule" of Article III, Section 3 of the Pennsylvania Constitution.

Following *Jury Commissioners II,* the Governor signed Act 4 of 2013 [2] into law on May 6, 2013, again authorizing the governing bodies of second class A and third through eighth class counties to adopt a resolution abolishing the office of jury commissioner. Act 4 of 2013 amended Section 401 of The County Code,[3] by addressing subsection (f), which provides:

(f) After review of the procedures in effect within the county to ensure that lists of potential jurors are a representative cross section of the community, the governing body of a county of the second class A or third through eighth class

1. Act of December 15, 2011, P.L. 442. House Bill No. 1644 of 2011, Printer's Number 2730, became Act 108 of 2011 upon its enactment.

2. Act of May 6, 2013, P.L. 22. Senate Bill No. 808 of 2013, Printer's Number 837, became Act 4 of 2013 upon its enactment.

3. Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 401(f). The County Code may be found in its entirety at 16 P.S. §§ 101–3000.3903.

may adopt, by a majority vote, a resolution abolishing the office of jury commissioner. Upon approval of the resolution, the office of jury commissioner shall expire at the completion of the current jury commissioners' terms of office.

16 P.S. § 401(f).

The Pennsylvania State Association of Jury Commissioners, its president and vice president, and duly elected commissioners from various counties in the Commonwealth (collectively, Jury Commissioners), filed a complaint for declaratory and injunctive relief in our original jurisdiction, alleging that Act 4 of 2013 is unconstitutional in the following respects: (1) it usurps the powers of the judiciary conferred under Article V, Sections 1 and 10 of the Pennsylvania Constitution[4] and, therefore, violates the separation of powers doctrine; (2) it unlawfully delegates to the governing bodies of counties the power to abolish the office of jury commissioner without guidance on how juries should be selected, in derogation of the powers conferred upon the judicial branch in Article V of the Pennsylvania Constitution; and (3) it violates the rights of candidates on the ballot for election to the post of jury

commissioner in the 2013 Municipal Election conferred by the First Amendment to the United States Constitution. The named respondents are the Commonwealth of Pennsylvania, acting by and through the Attorney General, the Governor, and the Secretary of the Commonwealth (collectively, Executive Respondents). Also named as respondents are the President Pro Tempore of the Pennsylvania Senate and the Speaker of the Pennsylvania House of Representatives (collectively, Legislative Respondents). In addition, the County Commissioners Association of Pennsylvania (County Commissioners) has intervened to oppose the Jury Commissioners' constitutional challenges to Act 4 of 2013.

 Whether Act 4 of 2013 can withstand the Jury Commissioners' constitutional challenges turns purely on issues of law.[5] To expedite consideration of this matter, this Court directed the parties to file dispositive motions for summary relief pursuant to Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure. With briefing concluded, those motions are now before the Court for disposition.[6]

---

**4.** Article V, Section 1 of the Pennsylvania Constitution provides for a "unified judicial system," as follows:

The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and [magisterial district judges]. All courts ... and their jurisdiction shall be in this unified judicial system.

Article V, Section 10 of the Pennsylvania Constitution, in general, vests in the Supreme Court the power to supervise the administration of the unified judicial system, which includes the power to adopt rules for the practice, procedure, and conduct of all courts.

**5.** "Our law provides a strong presumption that legislative enactments ... do not violate

the Constitution." *Ass'n of Settlement Cos. v. Dep't of Banking*, 977 A.2d 1257, 1261 (Pa. Cmwlth.2009) (en banc). The burden to overcome the presumption is heavy: "[A] statute will not be declared unconstitutional unless it *clearly, palpably,* and *plainly* violates the Constitution. All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 292, 877 A.2d 383, 393 (2005) (emphasis in original) (citation omitted).

**6.** The Jury Commissioners filed a motion styled as a motion for summary judgment. The County Commissioners filed a motion styled as a motion for judgment on the pleadings. Because the title of the motion does not affect our analysis or the outcome, we will treat both motions as having been filed pursu-

## I

The Jury Commissioners, pointing to the statutory provisions in the Judicial Code, 42 Pa.C.S. §§ 101–9909, that provide a framework for the creation, operation, and functions of jury selection commissions, assert that Act 4 of 2013 violates Article V of the Pennsylvania Constitution and the separation of powers doctrine.[7] The office of jury commissioner, they contend, has existed since 1868 and has evolved into a judicial office, as evidenced by its codification in the Judicial Code. They further note how the president judge of each county serves as the chairperson of the county's jury selection commission, though the commission itself operates by majority vote. The Jury Commissioners argue that the office of jury commissioner plays a key role in the judicial system, and that, therefore, Act 4 of 2013 violates the above-noted constitutional provisions and the separation of powers doctrine. Finally, they express concern over the lack of any provision in Act 4 of 2013 for a replacement mechanism for jury selection for counties where the office of jury commissioner is eliminated.

■ This Court, sitting en banc, considered and rejected these arguments in the context of a constitutional challenge to Act 108 of 2011. *Pa. State Ass'n of Jury Comm'rs v. Commonwealth,* 53 A.3d 109, 118–20 (Pa.Cmwlth.2012) (en banc) (*Jury Commissioners I* ), *rev'd on other grounds,* —— Pa. ——, 64 A.3d 611 (2013). Although the Supreme Court in *Jury Commissioners II* reversed this Court's decision that Act 108 of 2011 was not unconstitutional, it did so without addressing this Court's analysis and rejection of the argument that Act 108 of 2011 violated Article V of the Pennsylvania Constitution and the separation of powers doctrine. We continue to believe that the en banc Court's analysis of this issue in the prior case is correct. There, the Court opined:

> The Jury Commissioners Association relies upon our Supreme Court's decisions in *Wajert v. State Ethics Commission,* 491 Pa. 255, 420 A.2d 439 (1980), and *Snyder v. Unemployment Compensation Board of Review,* 509 Pa. 438, 502 A.2d 1232 (1985). Both of these decisions stand for the proposition that the Pennsylvania Constitution provides the Supreme Court with sole authority for the general supervision of the courts. The Jury Commissioners Association

---

ant to Pa. R.A.P. 1532(b). "Summary relief under Pa. R.A.P. 1532(b) is similar to the relief envisioned by the rules of civil procedure governing summary judgment." *Brittain v. Beard,* 601 Pa. 409, 417, 974 A.2d 479, 484 (2009). " 'An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute.' " *Jubelirer v. Rendell,* 598 Pa. 16, 28, 953 A.2d 514, 521 (2008) (quoting *Calloway v. Pa. Bd. of Prob. & Parole,* 857 A.2d 218 (Pa.Cmwlth.2004)).

7. Statutory provisions relating to jury selection commissions are found in Subchapter C of Chapter 21 of Part II of the Judicial Code, 42 Pa.C.S. §§ 2121–2124. These provisions include details regarding the number of members of a county's jury selection commission (Section 2121 of the Judicial Code); the man-

ner of filling positions on jury selection commissions (generally by election for nonjudicial members or by appointment) (Section 2122 of the Judicial Code); expenses, staff, and quarters for jury selection commissions (Section 2123 of the Judicial Code); and the powers and duties of jury selection commissions (Section 2124 of the Judicial Code). This latter provision provides that jury selection commissions "shall exercise the powers and perform the duties vested in and imposed upon such commissions by Subchapter B of Chapter 45" of the Judicial Code, 42 Pa.C.S. §§ 4521–4527, which relates to the selection and custody of jurors. Many of these provisions more specifically pertain to the duty of a jury selection commission to develop and maintain lists of potential jurors.

also mentions this Court's decision in *Olenginski v. County of Luzerne,* 24 A.3d 1103 (Pa.Cmwlth.2011), *appeal denied,* 615 Pa. 787, 42 A.3d 1061 (2012), in which we considered a challenge to legislation that made changes to a home rule ordinance resulting in the abolishment of that municipality's office of prothonotary. We concluded that the prothonotary of a common pleas court is a county officer, not a judicial officer, and that, therefore, a statute that gave county commissioners the authority to abolish that position did not violate Article V, Sections 1 or 10, or the separation of powers doctrine.

In *Olenginski,* we relied upon our Supreme Court's decision in *In re Administrative Order No. 1–MD–2003,* 594 Pa. 346, 936 A.2d 1 (2007), which involved the question of whether a prothonotary was a member of the judiciary or simply someone who performed ministerial functions derived from statute or rule of court. The Supreme Court concluded that prothonotaries have no power to act in a judicial capacity or to act as an attorney. On the basis of the Supreme Court's decision in *In re Administrative Order,* we rejected in *Olenginski* the appellant's argument that prothonotaries are part of the judiciary: "[N]owhere in the Pennsylvania Constitution is it stated that prothonotaries are part of the judiciary and neither of those sections provides that the judiciary supervises the office of the prothonotary." *Olenginski,* 24 A.3d at 1106. In summary, we surmised that the county's prothonotary was a county official. Based upon our holding in *Olenginski,* and based upon the similar lack in the Pennsylvania Constitution of any reference to a jury system, we reject the Jury Commissioners Association's argument.

There is no support in the law for the proposition that the elected office of jury commissioner is part of the judicial system, because the courts have no *constitutional* authority to exercise control over this *statutorily*-created office. It is clear that the General Assembly has the general power to repeal the laws it has enacted, unless, of course, the law amended the Pennsylvania Constitution and was ratified by the citizens of the Commonwealth.

. . . .

In summary, much of the Jury Commissioners Association's argument rests on an assumption that our Supreme Court, rather than the General Assembly, initiated and implemented the jury commissioner system set forth in the Judicial Code. As emphasized above, the jury commissioner system is a creature of the legislature. We are not faced here with the question of whether the General Assembly has impermissibly interfered with a system that the Supreme Court has implemented through its rulemaking authority.

*Jury Commissioners I,* 53 A.3d at 119–20 (footnotes omitted) (emphasis in original).

The Jury Commissioners urge us to reconsider the Court's prior decision on this question. In so doing, they misstate the prior decision as being premised solely on the notion that the legislature may eliminate any elected office, such as the office of jury commissioner, which the legislature created. (Jury Commissioners' Br. at 20.) Though this concept was certainly part of the Court's analysis, it does not encapsulate the entirety of the Court's reasoning, as the foregoing passage from the Court's prior decision reflects. At the same time, the Jury Commissioners fail to address directly and refute key points underpinning the Court's prior decision (*e.g.,* the lack of any reference in Article V of the

Pennsylvania Constitution to the office of jury commissioner as a judicial office).[8]

Instead, they argue that the office of jury commissioner is a judicial office because it is found in the Judicial Code, and not The County Code. They also note that, with the exception of the first judicial district, the president judge embracing each county serves on the jury selection commission as its chairperson. 42 Pa.C.S. § 2122(a). They contend that these points further confirm that the office of jury commissioner is a "judicial office." These arguments, however, do not persuade us, even if we could, to act contrary to the Court's prior en banc decision.

The Judicial Code does not support the Jury Commissioners' contention that the office of jury commissioner is a "judicial office." To the contrary, the Judicial Code defines "judicial officers" as including only "[j]udges, magisterial district judges and appointive judicial officers." *Id.* § 102. With the exception of the president judge, the elected jury commissioners do not meet this definition. Instead, elected jury commissioners fall within the definition of "county staff": "System and related personnel elected by the electorate of a county or subject to appointment and removal by officers, other than judicial officers, so elected. The term does not include judicial officers." *Id.* The Pennsylvania Supreme Court, in analyzing the Judicial Code, observed that its general supervisory authority over the unified judicial system *does not* extend to county staff, including elected jury commissioners. *See Beckert v. Warren,* 497 Pa. 137, 148, 439 A.2d 638, 644 (1981).

In addition, the premise that jury commissioners are excluded from The County Code is simply incorrect. As noted above, Act 4 of 2013 amended The *County Code,* not the Judicial Code. Under Article IV of The County Code, titled "County Officers," Section 401(a) lists the county elected offices, including "two jury commissioners." 16 P.S. § 401(a)(12). Moreover, the very authority of jury commissioners to organize themselves into a state association, like the Pennsylvania State Association of Jury Commissioners, a petitioner in this action, is founded in Section 440 of The County Code, which includes jury commissioners in a list of "county officers." *Id.* § 440.

The Jury Commissioners also attempt to distinguish this Court's decision in *Olenginski,* on which this Court relied in our prior decision. They contend that unlike the office of prothonotary, the office of jury commissioner is not listed as a county office in Article IX, Section 4 of the Pennsylvania Constitution, dealing with county government. This section provides:

> County officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs, registers of wills, recorders of deeds, prothonotaries, clerks of the courts, *and such others as may from time to time be provided by law.*

Pa. Const. art. IX, § 4 (emphasis added). Though the office of jury commissioner is not expressly listed, it is another county office "provided by law," specifically by The County Code. This, coupled with the absence of any reference in Article V of

---

8. Though the Jury Commissioners argue that since its inception in 1868, the office of jury commissioner has evolved into a judicial office, "which is reflected through the Constitutional Amendments" in 1968, they do not cite to any provision in the Pennsylvania Constitution embracing, let alone reflecting, that the framers of the 1968 amendments to the Pennsylvania Constitution expressly defined, let alone protected, the office of jury commissioner as a judicial office.

the Pennsylvania Constitution to the office of jury commissioner, causes us to reject the Jury Commissioners' efforts to distinguish this Court's precedent in *Olenginski.*

Unlike the county row offices enumerated in Article IX, Section 4 of the Pennsylvania Constitution, the elected office of jury commissioner is neither one of rule-making by our Pennsylvania Supreme Court nor one enumerated in and thus afforded special protection under the Pennsylvania Constitution. *See Dauphin Cnty. Comm'rs v. Teamsters Local No. 776,* 34 A.3d 864, 869 (Pa.Cmwlth.2011) (holding that county row offices created not by legislature, but by Pennsylvania Constitution, cannot be legislatively abolished), *appeal denied,* —— Pa. ——, 54 A.3d 350 (2012). It is a county office created by statute and one that the legislature, in its wisdom, is free to abolish. *See Lloyd v. Smith,* 176 Pa. 213, 221, 35 A. 199, 201 (1896) ("An office, therefore, not constitutional, exists by the will of the legislature only, and may be abolished at any time, and the incumbent has no standing to complain.").

## II

■ The Jury Commissioners' second constitutional challenge is related to the first. They contend that Act 4 of 2013 unlawfully delegates to the governing bodies of counties the power to abolish the office of jury commissioner without guidance on how juries should be selected, in derogation of the powers conferred upon the judicial branch in Article V of the Pennsylvania Constitution. The Jury Commissioners, however, misread Act 4 of 2013. For this reason, we reject this constitutional challenge.

The Judicial Code does not vest any powers or duties in an elected jury commissioner. All powers and duties, instead, lie within the jury selection commission as

a body. *See* 42 Pa.C.S. § 2124. The jury selection commission acts by a majority of its members. *Id.* § 2122(e). Act 4 of 2013 only empowers the governing authority of a county subject to the law to eliminate two of the three positions on the jury selection commission—*i.e.,* the two elected jury commissioners. It does not authorize the governing body of a county to eliminate the jury selection commission as a body, nor does it authorize the governing body to enact a local law that strips from the jury selection commission the powers and duties conferred on the commission by Section 2124 of the Judicial Code. Most importantly, Act 4 of 2013 does not authorize a county to opt out of the procedures for the compilation and maintenance of potential juror lists set forth in Subchapter B of Chapter 45 of the Judicial Code. For a county where the governing body elects to eliminate the elected office of jury commissioner, we have confidence that the president judge, as the sole remaining member of the county jury selection commission, will ensure that the county continues to compile lists of potential jurors in a manner consistent with the Judicial Code.

## III

■ The Jury Commissioners argue that Act 4 of 2013 violates the First Amendment rights of candidates on the ballot for election to the post of jury commissioner in the upcoming 2013 Municipal Election. The First Amendment to the United States Constitution, made applicable to the states through the Fourth Amendment, provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition

the Government for a redress of grievances.

The Jury Commissioners allege a deprivation of this right because the affected candidates "have spent substantial time and effort to campaign for the Office [of jury commissioner] and to have their names on the general election ballot in 2013." (Jury Commissioners' Br. at 34.)

 Our Supreme Court has opined:

[T]he First Amendment protects freedom of political expression and activity and ... the state must show a compelling interest in legislation restricting the exercise of such First Amendment rights. Since running for and holding political office are forms of political expression there must be a compelling state interest to uphold the validity of a restriction on holding political office.

*Commonwealth ex rel. Toole v. Yanoshak,* 464 Pa. 239, 242, 346 A.2d 304, 306 (1975) (citation omitted). This appears to be the First Amendment protection that the Jury Commissioners contend is implicated by Act 4 of 2013.

In support, the Jury Commissioners cite *Campbell v. Bysiewicz,* 242 F.Supp.2d 164 (D.Conn.2003). In *Campbell,* candidates seeking their respective party nominations to run for public office challenged certain statutes that set forth the process by which each parties' nominees would be placed on the general election ballot. One statute required the person circulating the nominating petition to be an eligible voter in the primary election for the candidate in question. The district court struck down that statute as an impermissible burden on First Amendment speech and association rights. *Campbell,* 242 F.Supp.2d at 171. The district court also found unconstitutional a provision that required a person seeking a party nomination in a primary to secure support from 15% of that party's delegates at a convention before the person can appear on the primary ballot. *Id.* at 174.

In addition to *Campbell* being a non-binding decision from a federal district court, the decision does not address the issue in this case. Act 4 of 2013 does not regulate how a person runs for the office of jury commissioner—*i.e.,* ballot access. It also does not restrict certain people from running for jury commissioner. *But see U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (upholding constitutionality of law that restricted certain government employees from engaging in political activity). Act 4 of 2013 eliminates an elected office altogether.

On the facts of this case, we agree with the Executive Defendants that this Court's decision in *Lyons v. City of Pittsburgh,* 137 Pa.Cmwlth. 330, 586 A.2d 469 (en banc), *appeal denied,* 527 Pa. 670, 593 A.2d 845 (1991), is on point. In *Lyons,* a sitting at-large councilman on the Pittsburgh City Council challenged an amendment to the city's Home Rule Charter, which eliminated the at-large council system in favor of district representation on the City Council. The elections were held under the new system and new councilpersons were elected. After the election, the at-large councilman filed a declaratory judgment action against the city, arguing that he was entitled to fill out the remainder of his four-year elected term. The trial court granted summary judgment in favor of the city and against the at-large councilman. He appealed the decision to this Court.

 On appeal, we affirmed the trial court, holding: "The law is well settled that public officers possess no vested right to a public office and a legislature or governing body may abolish a public office and oust the office holder prior to the completion of his term." *Lyons,* 586 A.2d

at 471. We also quoted from the Pennsylvania Supreme Court's decision in *Commonwealth ex rel. Elkin v. Moir*, 199 Pa. 534, 49 A. 351 (1901), in which the Supreme Court held:

There is no right to a public office, unless it is under the express protection of the constitution, and such protection is nowhere given to municipal officers. On the contrary, the universal rule is that, unless otherwise directed by the new act, the officers go out with the charter under which they held, and the officers under the new charter take their places, whether under the same or a different name. Merely official positions, unprotected by any special constitutional provisions, are subject to the exercise of the power of revision and repeal by the legislature.

*Moir*, 199 Pa. at 548–49, 49 A. at 355 (citation omitted).

Binding precedent, then, tells us that an elected municipal official has no right to hold office unless under the express protection of the Pennsylvania Constitution or the statute that purports to eliminate his office. Here, there is no provision in the Pennsylvania Constitution that protects the county elected office of jury commissioner from being eliminated by the legislature. Moreover, the only protection in Act 4 of 2013 afforded to jury commissioners in counties that choose to eliminate the office is the provision that allows those elected officials to serve out the remainder of their term. We find no reason to afford a candidate for elective municipal office greater rights to hold that office than the law affords the current officeholder. We, therefore, reject the Jury Commissioners' argument that Act 4 of 2013 violates their First Amendment right as candidates for the office of jury commissioner.

We appreciate the passion of the petitioners for their office and their commitment to carrying out their statutory duties as elected jury commissioners. We also acknowledge that those duties, without question, contribute to ensuring that the constitutional right to a fair trial by jury is observed in our courts. In this regard, the selection and summoning of potential jurors is an important part of our judicial system. Our decisions here and in the prior case involving Act 108 of 2011 are not indictments on the elected jury commissioner system that has existed in this Commonwealth, in one form or another, since 1868. Indeed, it is foreseeable that some counties will choose to keep the office despite the passage of Act 4 of 2013. The wisdom of the legislature's decision to empower counties to eliminate this elected county office is not within our purview. *See Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 288, 877 A.2d 383, 390 (2005).

Accordingly, we conclude that Act 4 of 2013 does not violate any of the constitutional provisions upon which the Jury Commissioners rely in seeking to obtain declaratory and injunctive relief. Because there are no disputes regarding the facts and because the right to summary relief in favor of the Executive Respondents, the Legislative Respondents, and the County Commissioners is clear, we will grant their applications for summary relief, thereby denying the Jury Commissioners' request for declaratory and injunctive relief. The Jury Commissioners' application for summary relief will be denied.

### ORDER

AND NOW, this 31st day of July, 2013, Petitioners' application for summary relief is DENIED. Respondents' and Intervenor County Commissioners Association of Pennsylvania's (Intervenor) applications for summary relief are GRANTED, thereby denying Petitioners' request for declar-

atory and injunctive relief. Judgment is entered in favor of Respondents and Intervenor.