# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Krista Rogers                                  :
                                               :
                                               :
            v.                                 : No. 161 C.D. 2023
                                               : Argued: December 6, 2023
Lycoming County Board of                       :
Commissioners, Tony Mussare,                   :
Scott Metzger, and Rick Mirabito,              :
                                               :
                  Appellants                   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                 FILED: January 26, 2024


        The Lycoming County (County) Board of Commissioners, and
Commissioners Tony Mussare, Scott Metzger, and Rick Mirabito (collectively,
Commissioners) appeal the order of the Lycoming County Court of Common Pleas
(trial court) denying their motions for post-trial relief and entering judgment in favor
of Krista Rogers (Controller) on her Complaint seeking declaratory relief. We
affirm.

**I.**

On April 10, 2021, the Commissioners initiated an action against the Controller based on their dissatisfaction with the performance of some of her duties. On July 10, 2021, the trial court dismissed the case, and the Commissioners did not appeal the trial court's order.

On April 13, 2021, the Commissioners and the County's Salary Board also took action to return the responsibility for payroll, accounts payable, and general ledger functions to the County's Office of Budget and Finance (Finance Office, formerly named the Fiscal Office). This included the reassignment of the employees whose positions were responsible for performing the payroll, accounts payable, and general ledger functions from the Controller's Office to the Finance Office.[1]

---

[1] At the September 22, 2022 hearing, the parties stipulated that the testimony of Commissioners' witness Brandy Clemens, the Director of the County's Finance Office, "exactly" described how the Controller's Office and the Finance Office performed their respective functions. *See* Tr. 9/22/22 at 80:25-81:1-10. The trial court summarized Clemens' relevant testimony as follows:

> Clemens testified that the actual accounts payable work is done in the Finance Office; the Controller is kept apprised routinely and has the power to act as a "check[] and balance[]," but is not involved in most of the processes involved with the day-to-day tasks required to perform the accounts payable. [Tr. 9/22/22] at 19:23. Clemens further affirmed that the Controller has unfettered access to the financial system used by the Finance Office to perform the accounts payable as well as the payroll and general ledger. *Id.* at 20:12-25. Additionally, the Controller has the ability to change who has access to the fiscal system. *Id.* at 21:1-4.
>
> Clemens additionally testified that the payroll process is presently done in the [Finance] Office and explained in detail how the payroll function works. *Id.* at 21:18-20; 21:18-26:3. The Commissioners' attorney summed the process up well: "So just so we're clear, [the Finance Office] prepare[s] the [payroll] edit, the edit

**(Footnote continued on next page…)**

goes to the Controller . . . the Controller's Office gets to check that, [and] nothing is moved forward until that occurs." *Id.* at 26:8-11. [Clemens] further testifie[d] that the payroll function uses the same financial system as the accounts payable function, which allows the Controller to view the payroll information and [Finance] Office's payroll reports. *Id.* at 26:21-5.

Regarding the general ledger function, Clemens testified that "currently all of the general ledger is maintained and all of the work pertaining to it is done in our office." *Id.* at 27:14-6. Clemens also confirms that the Controller has the "ability to review, change, modify, question, delete, [and] alter any general ledger entry," as well as monitor who is making general ledger entries using the financial system. *Id.* at 28:17-24. The Controller does not have custody of the General Ledger documents. *Id.* at 34:11-12. Clemens further impliedly confirmed that the general ledger function is not performed in the Controller's Office. *Id.* at 34:16-22. The Controller would not have access to the physical ledger documents unless the Finance Office [was] to grant it to her. *Id.* at 34:25-35:4; [*b*]*ut see* [*i*]*d.* at 38:20-22 (the [Finance] Office has never denied the Controller access to any information).

The fiscal system used to perform all three of these functions is a software that has been used by the County for more than 20 years. *Id.* at 29:11-5. The Controller has full access to the fiscal system as granted by the [Information Technology (IT)] department[,] which is ultimately supervised by the Commissioners. *Id.* at 31:25-32:14. The County has a "core financial group" who has ultimate authority as to how the financial functions are processed; the Controller does not have the authority to change the way the financial functions are processed unilaterally. *Id.* at 32:14-34:2; *but see* [*i*]*d.* at 38:2-5 (explaining that the reason the financial function processes can only be changed through cooperation within the core financial group is to account for the budget). The [c]ore [f]inancial group includes the Commissioners as well as the Controller. *Id.* at 33:5-7.

Trial Ct. 1/25/23 Opinion and Order at 2-3.

3

On December 10, 2021, the Controller filed the instant Complaint under the Declaratory Judgments Act (DJA),[2] seeking a declaration that "the Controller's statutory powers entitle and require her to be responsible for the general ledger, payroll, and accounts payable functions (financial functions) of the Lycoming County Government . . . and further declare that the Commissioners illegally transferred the employees from the Controller's office in violation of [T]he County Code."[3] Complaint at 14.[4] On February 11, 2022, the Commissioners filed an Answer with New Matter denying all of the material allegations raised therein. On March 1, 2022, the Controller filed a Reply to the New Matter.

On July 5, 2022, the trial court filed an order entering judgment on the pleadings in the Controller's favor. However, on July 15, 2022, the Commissioners filed post-trial motions requesting discovery and an evidentiary hearing. As a result, on July 26, 2022, the trial court issued an order vacating its prior order, and issued an August 16, 2022 order scheduling a hearing on September 22, 2022. Following the hearing, the parties filed proposed findings of fact and conclusions of law.

Ultimately, on December 1, 2022, the trial court entered an Opinion and Order: (1) granting judgment in the Controller's favor and against the Commissioners; (2) determining "that the actions of the Commissioners in removing responsibility, functions, and personnel from the Controller's [O]ffice violated [T]he County Code[]"; (3) directing the Commissioners to "forthwith return all ledgers,

---

[2] 42 Pa. C.S. §§7531-7541.

[3] Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§101-3000.3903.

[4] The Complaint also sought preliminary injunctive relief as well as any other relief that the trial court deemed "just" under the circumstances including the award of attorney fees. However, the Controller withdrew the request for injunctive relief at the hearing before the trial court.

4

accounts, payroll[,] and all related documentation to the Controller, and facilitate the return of her employees to her office, all of the same being necessary for the Controller to perform her statutory duties[]"; (4) denying "[a]ny injunctive relief" as moot; and (5) awarding the Controller "the costs of suit." Trial Ct. 12/1/22 Opinion and Order at 8. On December 9, 2022, the Commissioners filed post-trial motions preserving the claims raised in this appeal.

On January 25, 2023, following a hearing, the trial court filed an Opinion and Order denying the post-trial motions in which it explained, in relevant part:

> In this [c]ourt's December 1, 2022 [O]pinion and [O]rder, this [c]ourt decided the statutory responsibilities of the Controller and the Commissioners of Lycoming County. This [c]ourt laid out the specific responsibilities of each party as set forth under the relevant statutes as follows:
>
>> The [County Code] carves out separate powers related to the fiscal affairs of the [C]ounty to both the Commissioners and Controller. [Section] 1701[5] assigns the Commissioners as the managers and administrators of the fiscal affairs of the [C]ounty while [Section] 1702(b) enables the Commissioners to organize an audit to supplement the official acts of the Controller. On the other hand, [Section] 1702(a) assigns the responsibility for supervision of the fiscal affairs of the [C]ounty, including supervision of employees related to the fiscal affairs of

---

[5] 16 P.S. §1701. Section 1701 states: "The county commissioners shall be the responsible managers and administrators of the fiscal affairs of their respective counties in accordance with the provisions of this act and other applicable law."

5

the [C]ounty to the Controller.[6]  Section] 1705[7] requires the Controller to select and

---

[6] Section 1702(a)-(b) states:

(a)(1) Subject to the power and duty of the county commissioners to manage and administer the fiscal affairs of the county, the controller shall supervise the fiscal affairs of the county including the related accounts and official acts of all officers or other persons who shall collect, receive, hold or disburse, or be charged with the management or custody of, the public assets of the county.  The discretionary powers of the controller shall be applicable to matters or official acts involving the accounts and transactions of officers or other persons of the county including those indicated in [S]ection 1705.  The discretionary policies of the controller shall not be applicable to the establishment and adoption of the fiscal policies of the county commissioners.

(2) The controller may only refuse to authorize any fiscal transaction which is, by law, subject to his or her supervision or control where it appears that such transaction is not authorized by law, or has not been undertaken according to law, or has not received approval according to law, or as to which the controller desires upon reasonable grounds to investigate for or has already discovered any fraud, flagrant abuse of public office or any criminal act or neglect of any officer or other person of the county relating to their public accounts and transactions.  The controller may at any time require from any such officers or other persons, in writing, an account of all assets which may have come into their control.  Immediately, on the discovery of any default or delinquency, the controller shall report the same to the commissioners and to the district attorney of the county for such prosecution as may be warranted and shall take immediate measures to secure the public assets.

(b) Pursuant to subsection (a), the county commissioners, for the purpose of meeting Federal or State requirements, may issue a request for proposals for and contract with an independent certified public accountant or employ a public accountant for the purpose of preparing or conducting a report or audit of the fiscal affairs of the county, independent of and/or in addition to, that conducted by the county controller or auditors.  The controller shall be afforded an opportunity to comment on the request for proposals prior to

**(Footnote continued on next page…)**

6

administer the form and manner of maintaining financial records connected with the fiscal affairs of the [C]ounty.

[Trial Ct. 12/1/22 Opinion and] Order at 4. Here[,] there are sufficient stipulated facts to show that [Section] 1702(a) and [Section] 1705 of [T]he County Code are being violated in Lycoming County. The fiscal affairs of the [C]ounty and the supervision of employees related to the fiscal affairs of the [C]ounty are currently being performed in the [Finance] Office–not by the Controller. Further, the Controller does not have complete control over, nor administers the form and ma[nn]er of

issuance and the contract prior to execution. The contracts shall supplement, but not replace, the official acts and audits of the controller.

16 P.S. §1702(a)-(b).

[7] 16 P.S. §1705. Section 1705 states:

The controller shall maintain a full and regular set of financial records, including the general ledger, in electronic form or otherwise, which support financial statements in accordance with generally accepted accounting principles of all the fiscal operations of the county, embracing as many accounts, under appropriate titles, as may be necessary to meet Federal and State reporting requirements and to show distinctly and separately all the property of the county, its revenue and expenditures, and all debts and accounts due by the county officers or others, and the amount raised from each source of revenue, and the expenditures in detail, and classified by reference to the objects thereof. ***The controller shall select and administer the form and manner of maintaining the official financial records in connection with the fiscal affairs of the county. Where the controller prescribes a change in the form and manner of maintaining the official financial records, any costs necessary for implementation shall be subject to the approval of the county commissioners. In counties without a controller, the requirements of this section shall be fulfilled by the office of the county commissioners***.

(Emphasis added.)

7

maintaining financial records connected with the fiscal affairs of the [C]ounty. *Id.* Regardless of the reason, the Controller does not have the power to unilaterally change the fiscal software used by the [C]ounty to perform the financial functions. *Id.* To change (*i.e.*, select) the form and ma[nn]er of maintaining financial records, the Controller must petition the core financial group to decide as to whether such a change would be made, and the core financial group would have to cooperatively decide to do so. *Id.* Further, the level of access that the Controller has to the fiscal system is determined by the IT department, which is ultimately supervised by the Commissioners. *Id.*

Trial Ct. 1/25/23 Opinion and Order at 5.[8] The Commissioners then filed the instant appeal of the trial court's order.

---

[8] In its December 1, 2022 Opinion and Order, the trial court also addressed the application of Sections 1620 and 1750 of The County Code, explaining:

The salaries and benefits of employees are determined by the Commissioners[,] but "[t]he exercise of such responsibilities by the county [c]ommissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers." 16 P.S. §1620. Except in counties where there is no Controller, [the] Controller is responsible for claims and demands against the county. 16 P.S. §1750.

Trial Ct. 12/1/22 Opinion and Order at 4.

In turn, in relevant part, Section 1750 of The County Code provides:

The controller *or the county commissioners in counties having no controller* shall scrutinize, audit and decide on all bills, claims and demands whatsoever against the county, except such as are otherwise provided for in this subdivision. All persons having such claims shall first present the claims to the controller or to the county commissioners and, if required, make oath or affirmation before the controller or commissioners to the correctness of the claims. The controller *or the commissioners, as the case may be*, may require evidence, by oath or affirmation, of the claimant and otherwise that

**(Footnote continued on next page…)**

## II.

On appeal,[9] the Commissioners assert: (1) the trial court erred in awarding declaratory relief to the Controller, despite her failure to sustain her burden of proving the presence of an actual controversy based on the stipulated facts alone, and in failing to evaluate all of the facts as presented; (2) the trial court erred in its interpretation of the statutory scheme under The County Code that requires the Controller to exclusively perform the payroll, accounts payable, and general ledger functions for the County, and in concluding, by implication, that the Commissioners have no authority to control those functions or employees; (3) the trial court erred in prohibiting discovery as required by Section 7539(a) of the DJA when the issues that they raised were not solely conclusions of law;[10] and (4) the trial court erred and abused its discretion in permitting the testimony of the Controller's expert, Michael

the claim is legally due and that the supplies or services for which payment is claimed have been furnished or performed under legal authority.

16 P.S. §1750 (emphasis added). Likewise, Section 1751(a) of The County Code states, in pertinent part, that "in counties having a controller, the controller shall date, ***upon receipt,*** all bills, claims and demands which the controller approves, and shall forward the bills, claims or demands along with checks therefor to the county commissioners for their approval." 16 P.S. §1751(a) (emphasis added).

[9] When reviewing the trial court's denial of the Commissioners' post-trial motions, our review is limited to determining whether that court abused its discretion or committed an error of law. *Linder v. City of Chester*, 78 A.3d 694, 696 n.2 (Pa. Cmwlth. 2013) (citation omitted). "An abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Luzerne County Children & Youth Services v. Department of Human Services*, 203 A.3d 396, 398 (Pa. Cmwlth. 2019) (citation omitted).

[10] 42 Pa. C.S. §7539(a). Section 7539(a) states: "**(a) General rule.--**Relief may be granted under this subchapter notwithstanding the fact that the purpose or effect of the proceeding, in whole or in part, is to resolve or determine a question of fact."

9

Clapsadl, and denying the Commissioners the opportunity to conduct pretrial discovery.[11]

## III.

The Commissioners first claim that the trial court erred in awarding declaratory relief to the Controller because she did not meet her burden of proving the existence of an actual case or controversy, and because the relief is based solely on the erroneously recounted "stipulated" facts. Specifically, the Commissioners assert that the Controller failed to demonstrate an actual case or controversy warranting the grant of relief because she did not demonstrate any alleged invasion of a legal right that she purports to have under The County Code, and the facts, to the extent that they are "stipulated," fail to support any purported infringement upon her purported authority under that statute.

However, as pointed out by the Controller, this argument is based on the Commissioners' limited reading of the relevant sections of The County Code and their assertion that these provisions do not confer the authority asserted by the Controller in the Complaint. *See* Brief for Appellee at 13 ("[T]he Commissioners apparently contend that their role as managers and administrators [under Section 1701 of The County Code] grants them authority to completely usurp the independently-elected Controller of her supervisory responsibilities on a whim. However, as the trial court noted, management and administration is distinct from supervision, and to accept [the Commissioners'] interpretation would require this

---

[11] To the extent that the Commissioners assert claims that are not fairly comprised in the Statement of Questions Involved portion of their appellate brief, those claims have been waived for purposes of appeal. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

Court to ignore the full language of Section 1702, as well as other Controller-specific sections such as Sections 1705 and 1750.") (footnote omitted).

As this Court has explained:

> Petitions for declaratory judgments are governed by the provisions of the [DJA]. Although the [DJA] is to be liberally construed, one limitation on a court's ability to issue a declaratory judgment is that the issues involved must be ripe for judicial determination, meaning that there must be the presence of an actual case or controversy. Thus, the [DJA] requires a petition praying for declaratory relief to state an actual controversy between the petitioner and the named respondent.

> Declaratory judgments are not obtainable as a matter of right. Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction. As the Pennsylvania Supreme Court has stated:

>> The presence of antagonistic claims indicating imminent and inevitable litigation coupled with a clear manifestation that the declaration sought will be of practical help in ending the controversy are essential to the granting of relief by way of declaratory judgment. . . .

>> Only where there is a real controversy may a party obtain a declaratory judgment.

>> A declaratory judgment must not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic.

11

*Brouillette v. Wolf*, 213 A.3d 341, 357-58 (Pa. Cmwlth. 2019) (citations omitted).

Moreover, as we have observed:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by [substantial] evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by [substantial] evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

*Newman & Co., Inc. v. City of Philadelphia*, 249 A.3d 1240, 1244 n.5 (Pa. Cmwlth. 2021) (citation omitted).

The Commissioners' allegations of error in this regard are based solely on their preferred version of the facts underlying this matter and their preferred interpretation of the relevant provisions of The County Code. Contrary to the Commissioners' assertions, such claims do not establish the absence of an actual case or controversy precluding the grant of declaratory relief but, rather, demonstrate such a case or controversy is currently extant. Our review reveals that the facts underlying the trial court's order in this matter are amply supported by substantial evidence of record, and the trial court's interpretation of The County Code is not erroneous. In short, the Commissioners' claims in this regard are without merit and do not compel reversal of the trial court's order in this case.

**IV.**

The Commissioners next claim that the trial court erred in its interpretation of the statutory scheme relating to the Controller's authority under The

12

County Code in granting the requested declaratory relief. Specifically, the Commissioners contend that the trial court erred in discounting their authority under Section 1701, and over emphasizing the Controller's powers under the remaining provision of The County Code, in determining that they acted beyond their authority in moving the payroll, accounts payable, and general ledger functions and employees from the Controller's Office to the Finance Office.

However, the Commissioners overlook that the Controller is as much a constitutional county officer as are they. *See* article IX, section 4 of the Pennsylvania Constitution, Pa. Const. art. IX, §4 ("***County officers shall consist of commissioners, controllers or auditors***, district attorneys, public defenders, treasurers, sheriffs, registers of wills, recorders of deeds, prothonotaries, clerks of the courts, and such others as may from time to time be provided by law.") (emphasis added).

Indeed, as this Court has previously acknowledged:

These county offices provided for in [a]rticle IX, [s]ection 4 have unique constitutional standing, aptly described as follows:

> With minor exceptions[,] county row offices have constitutionally protected status. They cannot, for example, be locally or even legislatively abolished. They were established not by the legislature, but by the Pennsylvania Constitution . . . . One manifestation of this constitutional status is that their offices cannot be abolished. *See Lloyd v. Smith*, [35 A. 199, 201 (Pa. 1896)]. Section 1620 of [T]he County Code is written with the purpose and result of acknowledging and protecting the constitutional status of these officers.

13

*Dauphin County Commissioners v. Teamsters Local No. 776*, 34 A.3d 864, 869 (Pa. Cmwlth. 2011) (citation omitted); *see also Lloyd*, 35 A. at 201 ("The only tenable construction of [the predecessor to article IX, section 4] is that the county auditor is a constitutional officer only in the alternative, and that, so far as the office is concerned, it may be abolished at any time by the legislature, provided that the constitutional alternate, a county controller, is put in the place."); *Pennsylvania State Association of Jury Commissioners v. Commonwealth*, 74 A.3d 333, 340 (Pa. Cmwlth.), *aff'd*, 78 A.3d 1020 (Pa. 2013) ("Unlike the county row offices enumerated in [a]rticle IX, [s]ection 4 of the Pennsylvania Constitution, the elected office of jury commissioner is neither one of rule-making by our Pennsylvania Supreme Court nor one enumerated in and thus afforded special protection under the Pennsylvania Constitution.").

As recounted above, Sections 1702, 1705, 1750, and 1751 of The County Code confer specific powers upon the Controller that cannot be impaired or contravened by the general supervisory authority conferred upon the Commissioners by Section 1701. Any other construction of The County Code would be unconstitutional under article IX, section 4 as beyond the General Assembly's authority.[12] Moreover, under Section 1933 of the Statutory Construction Act of 1972,[13] it is a well-established rule of statutory construction that where a general

---

[12] *See, e.g.*, Section 1922(2) and (3) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1922(2) and (3) ("In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: . . . (2) That the General Assembly intends the entire statute to be effective and certain[; and] (3) That the General Assembly does not intend to violate the Constitution . . . of this Commonwealth.").

[13] 1 Pa. C.S. §1933. Section 1933 states:

**(Footnote continued on next page…)**

14

statutory provision is in conflict with a special provision, the special provision controls as an exception to the general.

In fact, the Controller's duties in this regard have been summarized as follows:

> Next to the commissioners[,] the controller is probably the most important official concerned with county financial administration. In financial control *per se*, [s]he is probably the most important. It is h[er] responsibility to supervise the accounts of all county officers who deal with public moneys. In addition to annually auditing, adjusting and settling their accounts, the controller authorizes all fiscal transactions. At any time [s]he can require officers to account for all public money and property under their jurisdiction. It is in h[er] power to investigate for fraud or any flagrant abuse of public money, and [s]he reports any such abuse of the public trust to the county commissioners and the district attorney with h[er] approbation of legal proceedings to be instituted against the officer involved.
>
> The controller is the official bookkeeper for the county. [Sh]e keeps a regular set of double entry books of

---

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later, and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

Thus, the general provision, can only trump the specific if the general was enacted at a later date and it is "the manifest intention of the General Assembly that such general provision shall prevail." *Id.* Here, Sections 1701, 1702, 1705, 1750, and 1751 of The County Code were all enacted at the same time in 1955, and although Section 1701 has not been subsequently amended, Sections 1702, 1705, 1750, and 1751 have all been amended, most recently in 2018. Furthermore, there is no "manifest intention of the General Assembly" that Section 1701 "shall prevail" over the provisions of Sections 1702, 1705, 1750, and 1751.

15

all fiscal transactions of the county and prescribes the manner in which all books and forms dealing with county fiscal affairs should be designed and maintained. From h[er] records [s]he prepares and submits a monthly report to the commissioners depicting the financial condition of the county and the current status of the budget appropriation accounts. . . . Annually, [s]he prepares a comprehensive report of the financial status of the county as per the end of the year detailing the revenues and expenses for the year. This financial report is submitted to the court of common pleas . . . and the public.[14] The

---

[14] *See* Section 1720(a) and (b) of The County Code, 16 P.S. §1720(a) and (b), which states, in relevant part:

(a) The controller . . . shall, at the end of each fiscal year, complete the audit, settlement and adjustment of the accounts of all county officers. The controller . . . shall, before the first day of July in every year, make a report, verified by oath or affirmation, to the county court of common pleas, unless upon due cause shown the court shall grant an extension of time, of all receipts and expenditures of the county for the preceding year, in detail, and classified by reference to the object thereof, together with a full statement of the financial conditions of the county.

(b) Within ten days after making a report to the court of common pleas, notice that the report is available for public inspection shall be published one time in at least one newspaper of general circulation in the county as the controller . . . may direct and shall be posted on the official publicly accessible Internet website of the county, but the aggregate cost of newspaper publication shall not exceed fifteen hundred dollars ($1500) in any one year in any county, to be paid for out of the county treasury. The entire report, which shall include a concise summary, shall be available for public inspection in the office of the controller . . . during regular business hours and on the official publicly accessible Internet website of the county.

*See also* Section 1703 of The County Code, 16 P.S. §1703 ("The controller shall furnish the commissioners of the county, whenever required by them, a detailed account of any officer or other person having in that individual's possession or under that individual's control funds belonging to the county, and shall, during regular office hours, give information respecting any of said accounts
**(Footnote continued on next page…)**

16

controller is also required to give information about the fiscal affairs of the county to any citizen desiring such information.

The controller may be said to perform both a pre-audit and a post-audit. [Sh]e performs the pre-audit through a daily check on purchases, through daily reports from the treasurer as to the status of all county funds and through monthly reports from all fee officers. [Sh]e performs the post-audit by virtue of h[er] authority to audit the books of any county office at any time.

The function of pre-audit, as will be pointed out below, is a most important one indeed. Here the controller scrutinizes, checks the status of appropriations and decides on the propriety of all bills, claims and other demands brought against the county. If [s]he approves the expenditure, [s]he draws and certifies vouchers for payment; if [s]he disapproves, [s]he sends a notice to the county commissioners stating the reasons for h[er] disapproval. H[er] disapproval can only be overridden by a court order obtained by the commissioners.[15] There is

---

to any taxpayer of the county demanding the same."); *id.* ("The controller shall have power and authority to require each and every county officer to make a quarterly statement with respect to moneys in the officer's possession or control as a county officer, showing the amount of cash on hand and the amount deposited in banks, banking institutions and trust companies, together with the names of such institutions."); Section 1730(a) of The County Code, 16 P.S. §1730(a) ("The reports of the controller . . .shall be filed among the records of the court of common pleas of the county.").

[15] *See* Section 1752 of The County Code, 16 P.S. §1752, which provides:

If, upon receipt, the controller does not approve a claim, bill or demand, the controller shall within fifteen days forward it to the county commissioners together with notice that the controller has disapproved the claim, bill or demand or is unable to approve the same and the reasons therefor. The county commissioners shall consider the claim, bill or demand and, if they consider that it should be paid by the county, they shall so notify the controller. If the controller thereafter continues to refuse approval no payment shall be made thereon by the county except pursuant to an order of court

**(Footnote continued on next page…)**

no similar pre-audit control in counties which do not have a controller.

* * *

The post-auditing duties of the controller include not only the audit of county moneys but also all taxes, penalties, fines, costs, etc., collected by the county treasurer and belonging to any of the county's political subdivisions.[16] The controller has custody of the county's titles to real estate, contracts, paid bonds and obligations . . . .[17] Finally, the controller also audits the accounts of parole and probation officers who receive any moneys paid under the sentence, order or judgment of any court, reporting the audit to that court.[18] To facilitate the

---

upon a proper issue thereto directing the controller to approve payment.

[16] *See supra* note 12.

[17] *See* Section 1704 of The County Code, 16 P.S. §1704, which states:

The controller shall have custody of and retain in original or other acceptable form, as provided in the most recent edition of the County Records Manual issued for the County Records Committee by the Pennsylvania Historical and Museum Commission, all title deeds to real estate owned by the county, and all executed contracts entered into by or on behalf of the county, and all records relating to its financial affairs, and all bonds and other obligations issued by the county, when paid. Such bonds and other obligations, when so paid, shall be monitored by the controller, a ledger of which shall be maintained by . . . her in a book or an electronic file dedicated for that purpose and retained according to the most recent edition of the County Records Manual.

[18] *See* Section 1720.1(a)(1) of The County Code, added by the Act of October 24, 2018, P.L. 931, 16 P.S. §1720.1(a)(1) ("It shall be the duty of the controller . . . to audit, settle and adjust the accounts of . . . [e]very parole and probation officer, appointed by the court under law, who shall receive from any person money paid under any order, sentence or judgment of any court, and to report the results of the audits to the court which has appointed the officer.").

18

performance of h[er] duties, the controller may appoint a deputy, clerks and a solicitor.[19]

Dr. John Wesley Cook, *Fiscal Administration in Pennsylvania Counties* 17-19 (1966).

Likewise, in this case, the trial court summarized the interplay between the relevant provisions of The County Code as follows:

> The [C]ounty [C]ode carves out separate powers related to the fiscal affairs of the [C]ounty to both the Commissioners and the Controller. [Section] 1701 assigns the Commissioners as the managers and administrators of the fiscal affairs of the [C]ounty while [Section] 1702(b) enables the Commissioners to organize an audit to supplement the official acts of the Controller. On the other hand, [Section] 1702(a) assigns the responsibility for supervision of the fiscal affairs of the [C]ounty, including supervision of employees related to the fiscal affairs of the [C]ounty to the Controller. [Section] 1705 requires the Controller to select and administer the form and manner of maintaining financial records connected with the fiscal affairs of the [C]ounty.
>
> Sections 1701 and 1702(a) are not in conflict and, as statutorily required, the court reads them in harmony. [Section] 1701 assigns the Commissioners as the *general managers and administrators* of the fiscal affairs of the [C]ounty whereas [Section] 1702(a) assigns responsibility for the *supervision* of the fiscal affairs of the [C]ounty. This [c]ourt must presume that the legislature selected different language for these consecutive provisions purposely. It follows that the separate offices have separate roles in overseeing those affairs. This reading is reinforced by the limiting language "[] in accordance with the provisions of this act and other applicable laws," in [Section] 1701. The legislature clearly intended for

---

[19] *See* Section 603(a) of The County Code, 16 P.S. §603(a) ("The controller in counties of the second class A, third, fourth and fifth classes **shall** appoint a deputy controller and clerks, and in counties of the sixth, seventh and eighth classes **may** appoint a deputy controller and clerks . . . .") (emphasis added).

[Section] 1702(a), among other provisions, to limit the authority granted to the Commissioners in [Section] 1701. The broadly worded [Section] 1701 must be read in the context of other sections of [T]he [County C]ode, including those relating to an elected [C]ounty Controller. Why else would the legislature provide a mechanism for the Commissioners to audit the fiscal affairs of the [C]ounty and include specific language stating that the audit supplements but does not replace the official acts and audits of the Controller? If [Section] 1701 truly provided broad discretion of the fiscal affairs of the [C]ounty, [T]he [County C]ode would not need to provide permission for the Commissioners to act in a manner [in which] they are already entitled to act. The legislature narrowed the scope of the authority it provided the Commissioners to undermine the Controller under [Section] 1702(b) by specifying that the Commissioners may "supplement but not replace" the acts of the Controller.

In simple terms, the interplay between [Section] 1702(a) and [Section] 1701 places the responsibility for supervision of the fiscal affairs of the [C]ounty with the Controller and gives agency to the Commissioners to act as a check to ensure, generally, that the fiscal affairs of the [C]ounty are being managed adequately. The Commissioners are the general overseers of the fiscal affairs of the [C]ounty, whereas the Controller is the supervisor who controls the everyday management of those affairs, including its employees. This reading is consistent with [the] statutory construction canon requiring the court to read separate provisions in harmony and to give precedence to the specific provision over the general provision. [Section] 1750 for example, delegates everyday management of a specific aspect of fiscal affairs to the Commissioners only in the absence of a Controller. This is similarly consistent with [Section] 1705 which gives authority to the Controller to select and administer the form and manner of maintaining the official financial records of the [C]ounty.

Trial Ct. 12/1/22 Opinion and Order at 4-5 (emphasis in original).

As exhaustively outlined above, the trial court properly analyzed the provisions of The County Code outlining the respective roles of the Commissioners and the Controller with respect to the Commissioners' removal of the payroll, accounts payable, and general ledger functions and employees from the Controller's Office to the Finance Office. Thus, contrary to the Commissioners' assertions, the trial court did not err or abuse its discretion in granting the requested declaratory relief based on the Commissioners' improper and unauthorized actions in this regard.

## V.

The Commissioners next claim that the trial court erred in prohibiting discovery as required by Section 7539(a) the DJA. Specifically, the Commissioners submit that because there are disputed material facts, "those issues must be determined as in other civil actions." *Regis Insurance Company v. All American Rathskeller, Inc.*, 976 A.2d 1157, 1162 (Pa. Super. 2009) (citing Section 7539 of the DJA).

However, the Commissioners are reading Section 7539(a) of the DJA too broadly.[20] Indeed, as the trial court noted, this Court has observed:

> The respondent further argues that because certain factual allegations in the petition for review are disputed[,] a declaratory judgment is not a proper remedy. Our Supreme Court has held, however, that the mere existence of a factual question does not divest a court of discretion in permitting a declaratory judgment action and that even if the dispute is wholly a factual one[,] an action is not

---

[20] Discovery matters are within the discretion of the trial court and the appellate court employs an abuse of discretion standard of review. *Luszczynski v. Bradley*, 729 A.2d 83, 87 (Pa. Super. 1999). Because challenges to discovery orders do not raise factual questions but, rather, legal questions, our scope of review is plenary. *In re Hasay*, 686 A.2d 809, 812 (Pa. 1996).

21

necessarily precluded. *Liberty Mutual Insurance Co. v. S.G.S. Co.*, [318 A.2d 906, 909 (Pa. 1974)].

*Delaware Valley Apartment House Owner's Association v. Department of Revenue*, 389 A.2d 234, 238 (Pa. Cmwlth. 1978).

Herein, although there are disputed facts relating to whether the Controller can perform her required duties under The County Code, the thrust of the Commissioners' argument is based on their misapplication of the various grants of authority under The County Code. As outlined above, the trial court properly analyzed the respective powers delegated under the relevant provisions of The County Code, and it is undisputed that the Commissioners moved the payroll, accounts payable, and general ledger functions and employees from the Controller's Office to the Finance Office. Because the trial court could properly dispose of the Controller's Complaint as a matter of law in spite of any purported factual conflicts, that court did not err in prohibiting discovery under Section 7539(a) of the DJA and the Commissioners' claim to the contrary is without merit.

## VI.

Finally, the Commissioners claim that the trial court erred and abused its discretion in permitting the testimony of the Controller's expert, Michael Clapsadl, and denying the Commissioners the opportunity to conduct pretrial discovery. Specifically, the Commissioners argue that his testimony improperly relates to the ultimate issue; constitutes conclusions of law; addresses issues irrelevant to the ultimate disposition of this case; and could not be properly impeached based on the trial court's refusal to permit pretrial discovery.

However, as the trial court explained:

When the Controller called Mr. Clapsadl, the parties and the [c]ourt had a discussion where the Commissioners objected to Mr. Clapsadl's testimony, and the [c]ourt made it clear that the issue presented is one of statutory construction. [Tr. 9/22/22] at 56:5-67:17. The Controller asserted that she wanted to offer Mr. Clapsadl's testimony to rebut the Commissioners' witness' testimony that the Controller is presently able to perform her statutory functions. *Id.* at 59:16-21. This [c]ourt limited Mr. Clapsadl's testimony to whether the Controller can perform the functions of her office under the present circumstances. *Id.* at 63:5-10.

Because this [c]ourt only allowed Mr. Clapsadl's testimony as to whether the Controller can perform the functions of her office, Mr. Clapsadl's testimony neither went to the ultimate issue nor constituted legal conclusions. The testimony was relevant to the issues before the court in that it rebutted the Commissioners' witness' testimony and that Mr. Clapsadl testified as to whether, in his opinion, the Controller is currently able to perform the functions of her office.

While it is true that the Commissioner[s] did not have the opportunity to engage in discovery of Mr. Clapsadl prior to the September hearing, this [c]ourt did not abuse it discretion is allowing Mr. Clapsadl to testify because, as the Commissioners candidly concede[d] during the January hearing, this [c]ourt did not need nor rely on Mr. Clapsadl's testimony to make its decision. As discussed, *ad nauseum* above, all of this [c]ourt's decisions in its December Opinion [and Order] were grounded in the stipulated facts. Mr. Clapsadl's testimony did not move the needle as to the ultimate determination whatsoever. Therefore, the [Commissioners] were not harmed or prejudiced by the [c]ourt's ruling allowing Mr. Clapsadl's testimony.

Trial Ct. 1/25/23 Opinion and Order at 11-12.

In addition, as noted by the trial court:

It is well[]established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion. Thus, [we] may reverse an evidentiary ruling only upon a showing that the trial court abused that discretion. A determination that a trial court abused its discretion in making an evidentiary ruling may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Further, discretion is abused when the law is either overridden or misapplied.

*Commonwealth v. Hoover*, 107 A.3d 723, 729 (Pa. 2014) (citations, ellipses, and quotation marks omitted).

Moreover, because the trial court explicitly explained that it did not rely on this testimony in resolving the ultimate issues in this case, any purported error in this regard is harmless. As a result, even if it is assumed that the Commissioners are correct in this regard, the trial court's order granting the Controller relief should not be disturbed on this basis. *See, e.g.*, *Pennsy Supply, Inc. v. Zoning Hearing Board of Dorrance Township*, 987 A.2d 1243, 1251 (Pa. Cmwlth. 2009) ("[T]he trial court's reference to [a case stating the incorrect burden of proof] in its original opinion was harmless error since the trial court affirmed the [board's] decision that applied the appropriate burden of proof, and the error had no effect on the outcome of this case."); *Campbell v. Department of Environmental Resources*, 396 A.2d 870, 870 (Pa. Cmwlth. 1979) ("It is axiomatic that we will not disturb a judgment, order, or decree on appeal for harmless error. *Paley v. Trautman*, [177 A. 819, 820 (Pa. 1935).]"). In sum, even if the Commissioners' allegation of error in this regard is correct, it cannot provide a basis for the requested appellate relief.

Accordingly, the trial court's order is affirmed.

_____

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Krista Rogers | : | |
| | : | |
| v. | : No. 161 C.D. 2023 | |
| | : | |
| Lycoming County Board of | : | |
| Commissioners, Tony Mussare, | : | |
| Scott Metzger, and Rick Mirabito, | : | |
| | : | |
| Appellants | : | |

# **O R D E R**

AND NOW, this 26th day of January, 2024, the order of the Lycoming County Court of Common Pleas dated January 25, 2023, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge